**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALFREDO MACEDO TEMPLOS, *Petitioner*, <br><br> v. <br><br> ROBERT M. WILKINSON, Acting Attorney General, *Respondent.* | No. 15-73122 <br><br> Agency No. A089-244-826 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 19, 2020
Honolulu, Hawaii

Filed February 9, 2021

Before: J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Wallace;
Concurrence by Judge Bea

**SUMMARY**[*]

**Immigration**

Denying in part and granting in part Alfredo Macedo Templos's petition for review of the Board of Immigration Appeals' denial of withholding of removal and protection under the Convention Against Torture, and remanding, the panel held that the Board correctly concluded that Macedo's social group comprised of "Mexican wealthy business owners" was not cognizable for purposes of withholding relief, but that the Board erred in concluding that Macedo failed to establish government involvement in, or acquiescence to, his alleged torture for purposes of CAT relief.

The panel held that the Board correctly concluded that Macedo's proposed social group of "Mexican wealthy business owners" was not cognizable because it lacked social distinction, particularity, or an immutable characteristic. First, the panel explained that Macedo's proposed group was not socially distinct, because the record lacked evidence that Mexican society perceives wealthy business owners as a distinct group, and the United States Department of State's Country Report states that kidnapping for ransom occurs at "all socioeconomic levels." Second, the panel explained that the proposed group lacks particularity because it could include large swaths of people and various cross-sections of a community. Finally, the panel explained that being a wealthy business owner is not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

an immutable characteristic because it is not fundamental to an individual's identity.

The panel held that even if Macedo's proposed group were cognizable, he would still not be entitled to withholding relief, because substantial evidence supported the IJ's decision that Macedo did not establish a nexus between the feared harm and his alleged membership in the proposed group.

Addressing Macedo's CAT claim, the panel held that the Board erred in concluding that Macedo had not proven he had been "subjected to any harm by Mexican officials." Macedo argued that he established the Mexican government's acquiescence to his torture because he had reasons to believe he was targeted by Mexican judicial police, an official discouraged him from filing a report, and he filed police reports and no action was taken. The panel noted that the Board's decision preceded and therefore did not consider this court's opinion in *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017) (holding that the question of whether the public officials who perpetrated torture against the petitioner were acting in their official capacity is irrelevant, and that the implementing regulations do not establish a "rogue official" exception to CAT relief). The panel concluded that even if the judicial officers who attacked Macedo were not in uniform and did not act in their official capacity, Macedo sufficiently demonstrated that he was the victim of an official perpetration of violence. The panel remanded for the Board to consider whether Macedo's past harm by judicial officers qualified as torture, and whether Macedo otherwise established that it was more likely than not he would be tortured if returned.

Concurring, Judge Bea agreed that "wealthy business owner" does not meet the particularity or social distinction elements required to merit classification as a cognizable particular social group, but would refrain from holding that it cannot be an immutable characteristic. Judge Bea wrote separately to make clear that the majority's holding otherwise must be considered erroneous dicta.

## COUNSEL

Kevin Block (argued), Wailuku, Hawaii, for Petitioner.

Tim Ramnitz (argued), Attorney; Russell J.E. Verby, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

WALLACE, Circuit Judge:

Alfredo Macedo Templos petitions from the Board of Immigration Appeals (Board) and challenges the denial of his application for withholding of removal and relief pursuant to the Convention Against Torture (CAT).

Macedo is a native citizen of Mexico. He states he fled Mexico after he and his family were targeted by criminals due to his successful clothing business. The Immigration Judge (IJ) concluded that, although Macedo was credible, he was not eligible for withholding of removal or CAT relief. The IJ held that Macedo's proposed particular social group was not cognizable, and there was no nexus between the

alleged harm and his membership in the proposed group. The IJ also concluded that Macedo was not eligible for CAT relief because he failed to establish the Mexican government's involvement in, or acquiescence to, his torture. The Board affirmed and provided additional analysis for why it believed the IJ's determination was not clear error. Macedo petitions for review of the denial of his application for withholding of removal and CAT status.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We review both the IJ's and the Board's (collectively, the Agency) decisions when they each conduct a review of the evidence and the law. *See Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). We review the IJ's factual findings for substantial evidence. *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007). We review questions of law, such as whether a proposed particular social group is cognizable for purposes of withholding of removal, de novo. *Perdomo v. Holder*, 611 F.3d 662, 665 (9th Cir. 2010). We deny the petition for review in part and grant and remand in part.

I.

Macedo was a small business owner in Mexico City, and he achieved some success. His business produced custom-made shirts and clothing, and it employed approximately 20 workers. However, he was extorted in 2000 by a group of unidentified individuals because of this success; they demanded monthly safety fees. Macedo refused and relocated his business to his home to avoid reprisals. He did not file a report with the police after an official warned him that the criminals could retaliate if they learned of the report. His home was subsequently targeted in 2003 with a drive-by-shooting, and he discovered a note that he believed linked the extortion attempt with the shooting. Macedo then closed the production side of his business and transitioned to selling

only his remaining stock of clothes.  Yet he and his family continued to be targeted with other crimes.

While selling his clothes in 2005, Macedo asserts that his vehicle was pulled over and he was beaten by two individuals he believes were judicial police officers. Macedo testified that one of them told him the attack was because Macedo did not pay, although the individual did not elaborate further.  Macedo, therefore, assumed the attack was related to the original extortion because he never changed his car and the judicial police officers likely identified him through it.  He did not file a report because he believed the government and the criminals "were the same thing," and he would be punished for reporting the incident to the police.  Macedo does not have proof that the people who targeted him were connected with the Mexican government, but he believes they had to be connected.

He first entered the United States in 2006 with a six-month permit.  He returned to Mexico after five months but was shortly thereafter assaulted, and his car was stolen. Macedo reported the attack and theft for insurance purposes, and he decided to return to the United States.  Macedo was admitted to the United States for a second time on January 12, 2007, as a non-immigrant B2 visitor with authorization to remain in the country until July 11, 2007.  Macedo overstayed his visa without the Department of Homeland Security's approval.

In 2009, kidnappers abducted his youngest daughter in Mexico for ransom.  Her kidnappers demanded two million pesos but agreed to one million pesos.  During her ordeal, the kidnappers beat and raped her.  The kidnappers did not explain why they had targeted the Macedo family, but the kidnappers warned the family not to report the crime because the kidnappers had police connections.  The Macedo family

ignored the warning and filed a report. In the end, Macedo reported some of these crimes to the local authorities, but he chose not to file reports on other crimes.

In 2013, the Department of Homeland Security initiated removal proceedings pursuant to its authority under the Immigration and Naturalization Act. Macedo admitted the factual allegations and conceded removability, but he requested the opportunity to present an application for withholding of removal and CAT relief. At his hearing in front of the IJ, Macedo presented testimony about how he was targeted due to his successful business. His sister and youngest daughter testified about the crimes against the family, as well as why Macedo had to leave Mexico and could not return. Macedo testified that he believed these crimes were connected and had to stem from his refusal to comply with the original extortion demand, and he feared for his life because he believed his government would not protect him.

The IJ confirmed that Macedo was not eligible for asylum because he failed to file the required petition within a year of his arrival in the United States and did not establish any of the exceptions to the one-year filing requirement. The IJ found Macedo and his family credible. Nonetheless, the IJ held that Macedo had not established past persecution nor a clear probability of future persecution so that his life would be threatened by returning to Mexico. The IJ also determined that Macedo's proposed group of "wealthy business owners" was not cognizable.

The IJ held that there was no nexus between the crimes against Macedo and his family and his membership in the proposed group; Macedo simply assumed the attacks against him were related to the original extortion. The IJ concluded that Macedo had not established acquiescence by Mexican

officials or their involvement in his treatment. The IJ denied Macedo's applications for withholding of removal and CAT relief.

Macedo appealed to the Board. The Board affirmed the denials and held that Macedo had failed to establish a cognizable particular social group, as well as a nexus between the feared harm and a protected ground. The Board further held that "[b]eing a business owner is not an immutable characteristic." It determined that Macedo's victimization was the product of crime rather than persecution. The Board concluded that Macedo did not have a valid claim for CAT relief because he failed to establish government acquiescence to, or involvement in, his alleged torture.

Macedo argues two issues in his petition for review. The first is whether the Board erred in affirming that his proposed particular social group of Mexican wealthy business owners who do not comply with extortion attempts is not a cognizable group and there was no nexus between the harm and the proposed group. The second is whether the Board erred in affirming that Macedo was ineligible for CAT relief because he did not establish government involvement in, or acquiescence to, his alleged torture.

## II.

The Board's rejection of Macedo's proposed particular social group as not cognizable was correct, as was its holding that Macedo failed to establish a clear nexus between the harm suffered and his alleged membership in the proposed group. Macedo makes three arguments, although we address only two. Macedo's third argument is that the IJ erred by not making a case-by-case determination of whether he made a valid claim. This argument ignores the record, as

both the IJ and the Board conducted an individualized analysis of his petition. Therefore, we do not address this argument further.

Macedo's first argument is that his membership in his proposed group does not have to be the *only* central reason for his persecution, so that he should not be precluded from relief even if the primary motivation of his attackers was crime rather than persecution. His second argument is that his former occupation as a business owner corresponds with the characteristics of a particular social group because it was an immutable voluntary association. However, the cases Macedo relies on are easily distinguishable, and we reject his argument that being a wealthy business owner is an immutable characteristic.

To qualify for withholding of removal, Macedo must demonstrate that his life would be threatened if he were removed to Mexico because of one of five enumerated grounds, including membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A); *see also Reyes v. Lynch*, 842 F.3d 1125, 1132 n.3 (9th Cir. 2016) (establishing the existence of a cognizable particular social group is a separate requirement from establishing membership in the group). Membership in the group must be "a reason" for Macedo's feared mistreatment. 8 U.S.C. § 1231(b)(3)(C); *see also Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (holding that the "a reason" standard in section 1231(b)(3)(C) is a less demanding standard than the asylum statute's "one central reason" standard in section 1158(b)(1)(B)(i)).

We have held that the phrase "particular social group" is ambiguous, thus the Agency's interpretation of that term is entitled to *Chevron* deference so long as it is reasonable. *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083, 1087 (9th Cir. 2013) (holding Board's construction must be accepted

if reasonable, even if not the best interpretation). An interpretation fails this step if it is "arbitrary or capricious in substance." *Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011) (citation and quotation marks omitted). Two companion Board decisions clarified the elements underlying the Agency's particular social group analysis: *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014) and *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014). In *Matter of M-E-V-G-*, the Board held that the applicant must establish that the group they claim membership in must be: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." 26 I. & N. Dec. at 237.

In *Matter of W-G-R-*, the Board further defined each factor. 26 I & N Dec. at 212–18. The common immutable characteristic has been defined as one "that the members of the group either cannot change, or should not be required to change[,] because it is fundamental to their individual identities or consciences." *Id.* at 212 (citation omitted). The particularity element requires characteristics that "provide a clear benchmark for determining who falls within the group," such that the relevant society has a commonly accepted definition of the group. *Id.* at 214. "The group must also be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Id.* Social distinction requires evidence that "society in general perceives, considers, or recognizes persons sharing the characteristic to be a group." *Id.* at 217; *see also Cordoba v. Barr*, 962 F.3d 479, 482–83 (9th Cir. 2020) (observing that the persecutor's perspective "may be relevant" to the extent "it can be indicative of whether society views the group as distinct," but "the persecutors' perception is not itself enough to make a group socially

distinct, and persecutory conduct alone cannot define the group") (citation omitted).

Substantial evidence supports the holding that Macedo failed to establish a particular social group. First, the Agency was correct that Macedo's proposed group was not socially distinct. The record does not include evidence that Mexican society perceives wealthy business owners as a distinct group, and the 2013 United States Department of State's Country Report on Mexico states that kidnapping for ransom occurs at "all socioeconomic levels." Second, the proposed group lacks particularity because it could include large swaths of people and various cross-sections of a community. *See, e.g.*, *Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1164 (9th Cir. 2013) (holding that groups that "include large numbers of people with different conditions and in different circumstances" and "sweep up a large and disparate population" lack particularity). Finally, being a wealthy business owner is not an immutable characteristic because it is not fundamental to an individual's identity. *See, e.g.*, *Sicaju-Diaz v. Holder*, 663 F.3d 1, 3–4 (1st Cir. 2011); *Tapiero de Orejuela v. Gonzalez*, 423 F.3d 666, 672–73 (7th Cir. 2005) (holding that wealthy educated landowning cattle farmers in Colombia who were targeted by FARC because of their social position were a particular social group but clarifying that the group was "not merely defined by wealth, a characteristic that standing alone" has been rejected by the Agency).

Even if Macedo's proposed group were cognizable, he would still not be entitled to relief. Substantial evidence supports the IJ's decision that Macedo did not establish a nexus between the feared harm and his alleged membership in the proposed group. Macedo did not present evidence that the crimes were committed by the same criminals driven by

the same motive, beyond his opinion that his victimization stemmed from his refusal to pay his original extortioners. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (holding that an applicant's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground"). The evidence proves that criminals in Mexico will target anyone they believe can pay, regardless of their victim's background or reason for their wealth. Macedo's youngest daughter never learned why she was kidnapped and raped or later held at gunpoint during a mugging. Even the verbal and written threats against Macedo were ambiguous.

We affirm the Agency's denial of Macedo's application for withholding of removal.

## III.

The Board's rejection of Macedo's CAT request is more complicated. Macedo argues that he established the Mexican government's acquiescence to his torture because he filed police reports and no action was taken, he believes he was targeted by Mexican judicial police, and an official discouraged him from filing a report. Without reaching the other alleged evidence of acquiescence, we hold that the Board did not properly consider Macedo's testimony regarding the attack by the Mexican judicial officers based on our subsequent decision in *Barajas-Romero*. We, therefore, grant Macedo's petition on this limited question for his CAT application.

To receive CAT relief, Macedo must show that he would "more likely than not" be tortured if removed. 8 C.F.R. §§ 208.16(c)(2), 208.17(a). Torture is an extreme form of "cruel and inhuman treatment that either (1) is not lawfully sanctioned by that country or (2) is lawfully sanctioned by

that country[] *but* defeats the object and purpose of the convention." *Nuru v. Gonzales*, 404 F.3d 1207, 1221 (9th Cir. 2005) (citation omitted) (emphasis in original). Macedo must prove "a chance greater than fifty percent that he will be tortured" if removed to Mexico. *Hamoui v. Ashcroft*, 389 F.3d 821, 827 (9th Cir. 2004). Macedo must also prove that he would experience torture "inflicted by or at the instigation of or with the consent or acquiescence of a [Mexican] public official or other person acting in an official capacity." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011), *quoting* 8 C.F.R. § 208.18(a)(1); *Zheng v. Ashcroft*, 332 F.3d 1186, 1188 (9th Cir. 2003). We must consider "[a]ll evidence relevant to the probability of future torture . . . including past torture and country conditions." *Barajas-Romero*, 846 F.3d at 361, *citing* 8 C.F.R. § 208.16.

Macedo did not discuss the impact of *Barajas-Romero* in his petition, and, understandably, neither did the IJ or the Board in their decisions, which predated *Barajas-Romero*. However, the decision is relevant to the Agency's CAT analysis. In *Barajas-Romero*, we held that the question of whether the public officials who perpetrated torture against the petitioner were acting in their official capacity is irrelevant. *Id.* at 362–63. We reasoned that the implementing regulations do not establish a "rogue official" exception to CAT relief. Thus, the four attackers at issue in *Barajas-Romero* may have been public officials even though other Mexican "state or federal authorities might not similarly acquiesce." *Id*. at 362. We also held that the regulation does not require that the public official be carrying out his official duties, so long as he is the perpetrator or knowingly acquiesces to the torture. *Id.* We concluded in *Barajas-Romero* that the record supported the inference that the four local policemen were public officials who themselves inflicted the torture, so that the petitioner

was entitled to Board reconsideration of his CAT claim. *Id.* at 364–65. There was no such consideration by the Board or the IJ in this case.

As in *Barajas-Romero*, the record supports the inference that the judicial officers "were public officials." *Id.* at 363. The IJ found, and the Board does not dispute, that Macedo's testimony was credible. Macedo testified that he was robbed and assaulted by individuals he believed to be "judicial police" because they "had an official vehicle from the judicial police." With that, we conclude that the Board erred in finding that Macedo had not proven he had been "subjected to any harm by Mexican officials."[1] Even if the judicial officers were not in uniform and did not act in their official capacity, Macedo has sufficiently demonstrated that he was the victim of an official perpetration of violence.

Consequently, there are two remaining issues to be considered by the Board on remand. The IJ considered Macedo's past harm but did not specifically hold whether it qualified as torture, nor did the Agency consider whether Macedo had otherwise established that it was more likely than not he would be tortured if returned to Mexico. We, therefore, grant Macedo's petition for review of his application for CAT relief and remand the issue to the Board.

---

[1] The Board also held that "the record does not indicate that Mexican authorities have any specific interest in harming" Macedo. While that may be true, such a finding is irrelevant to Macedo's eligibility for CAT relief. We reiterate that the government need only consent or acquiesce to a petitioner's harm for the petitioner to be eligible for CAT relief— not specifically intend it. *See Cole*, 659 F.3d at 771, *quoting* 8 C.F.R. § 208.18(a)(1).

IV.

Thus, we affirm the Agency's denial of Macedo's application for withholding of removal, but we grant his petition for additional review of his application for CAT relief. We remand with instructions for the Board to consider whether the attack by the judicial police officers qualifies as torture and whether Macedo has established that it was more likely than not he would be tortured if returned to Mexico.

**DENIED in part and GRANTED and REMANDED in part.**

---

BEA, Circuit Judge, concurring:

While I agree "wealthy business owner" does not meet the particularity or social distinction elements required to merit classification as a cognizable particular social group ("PSG"), I would refrain from holding that it cannot be an immutable characteristic. For successful entrepreneurs, their business is their life, and in America we revere economic autonomy and entrepreneurship as central to the inalienable right to pursue one's own happiness. I write separately to make clear that the majority's holding otherwise must be considered erroneous dicta.

We have deferred to the BIA's definition of immutability as "something that either cannot be changed or that *the group members should not be required to change in order to avoid persecution.*" *Pirir-Boc v. Holder*, 750 F.3d 1077, 1081 n.3 (9th Cir. 2014) (emphasis added). It is a characteristic "so fundamental to one's identity that a person should not be required to abandon it." *Id.* at 1081–82 (quoting *Henriquez-*

*Rivas v. Holder*, 707 F.3d 1081, 1084 (9th Cir. 2013)). Under that rubric, we have held as immutable such characteristics as homosexuality, *Hernandez-Montiel v. I.N.S.*, 225 F.3d 1084, 1093 (9th Cir. 2000), *overruled on other grounds by Thomas v. Gonzales*, 409 F.3d 1177 (9th Cir. 2005) (en banc); and membership in one's family, *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015).

Macedo Templos's proposed PSG describes the characteristic of being successful entrepreneurs in a free-market economy and polity. It describes the pinnacle of self-determination, an ethos, an inextinguishable yearning to create, innovate, and succeed for the betterment of self, family, and society. *See* Amir N. Licht, *The Entrepreneurial Spirit and What the Law Can Do About It*, 28 Comp. Lab. L. & Pol'y J. 817 (2007) (describing the scholarship examining the entrepreneurial spirit in the individual and reflecting on its dependency upon a supportive society, culture, and legal framework). It is a characteristic which a person should not be required to abandon. We would be corrupting long-held American principles if we were to require applicants to forsake ownership of their successful business or ignore persecution of those who refuse to give up on thriving economically through entrepreneurship in their home country. *See, e.g.*, Alexis de Tocqueville, 2 *Democracy in America* 724 (Henry Reeve trans., D. Appleton 1899) (1835) ("Boldness of enterprise is the foremost cause of [America's] rapid progress, its strength, and its greatness."); 15 U.S.C. § 631 ("The essence of the American economic system of private enterprise is free competition. . . . The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation."). It would be a renunciation of the American Dream.

The majority does not cite to any Ninth Circuit precedent to the contrary.  Nor is this position at odds with BIA's holding in *Matter of Acosta*, 19 I. & N. Dec. 211, 234 (BIA 1985), to which we have favorably cited.  *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1084 (9th Cir. 2013).  In *Matter of Acosta*, the BIA held that the characteristic of being a taxi driver is not "immutable because the members of the group could avoid the threats of the guerrillas . . . by changing jobs."  19 I. & N. Dec. at 23.  BIA explained: "It may be unfortunate that the respondent either would have had to change his means of earning a living or cooperate with the guerrillas in order to avoid their threats. However, the internationally accepted concept of a refugee simply does not guarantee an individual a right to work in the job of his choice."  This holding stands only for the proposition that a person's choice of profession is not immutable.  We have never said that the desire to work in *any* profession is mutable, or more to the point, that ownership of a business cannot be an immutable characteristic.  And I would not do so here.

I agree that this Petitioner failed to show "wealthy business owner" is a cognizable PSG on the basis of the particularity and social distinction prongs.  What Macedo Templos has gained in describing generally an immutable characteristic, he has lost in delineating a particular and socially distinct group.  These comparatively straightforward findings make the majority's holding as to immutability unnecessary as well as misguided.  I would rather the majority follow our previous examples in avoiding making unnecessary, categorical declarations as to whether a characteristic is immutable when the petitioner's clear failure to establish particularity and social distinction makes doing so unnecessary.  *See Cordoba v. Barr*, 962 F.3d 479, 483 (9th Cir. 2020) (holding "Columbian wealthy

landowners" lacked social distinction but refraining from holding the proposed characteristic was not immutable); *Mevlyudov v. Barr*, 821 F. App'x 737, 739 (9th Cir. 2020) (unpublished) (holding "Ukrainian car salesmen" lacks particularity and social distinction but refraining from holding the proposed characteristic was not immutable); *Palacios-Palacios v. Barr*, 814 F. App'x 227, 229 (9th Cir. 2020) (unpublished) (holding "Salvadoran women who are single mothers with children, who own a small business in rural El Salvador, and whose partners are residing in the United States" lacks social distinction but refraining from holding the proposed characteristic was not immutable).

I would not establish precedent that would prevent other PSGs from obtaining asylum or withholding of removal status—ones that do meet those requirements of particularity and social distinction—on the basis that a desire for self-determination and successful entrepreneurship is something that a person should be required to forsake.