NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EVGENII REDIN; NADEZDA REDINA, | No. 23-1017 |
| Petitioners, | Agency Nos. A205-326-700 |
| v. | A205-326-701 |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 25, 2024**
Portland, Oregon

Before: LEE, VANDYKE, and H.A. THOMAS, Circuit Judges.

Petitioners seek review of a Board of Immigration Appeals (BIA) decision

dismissing an appeal of an Immigration Judge (IJ)'s denial of their claims for

asylum, withholding of removal, and Convention Against Torture (CAT) relief. We

have jurisdiction under 8 U.S.C. § 1252. "[U]nder the highly deferential substantial

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral
argument. *See* Fed. R. App. P. 34(a)(2).

evidence standard," *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1016 (9th Cir. 2023), findings of fact are "conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary." *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022) (citation and internal quotation marks omitted). We deny the petition.

1. For asylum and withholding claims premised on political opinion, petitioners must show (1) past persecution or an objectively reasonable fear of future harm and (2) a causal nexus to the political opinion. *Rodriguez-Zuniga*, 69 F.4th at 1016. Petitioners must demonstrate that persecution occurs "*because of* th[e] political opinion," not another reason. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992), *superseded by statute on other grounds*, 8 U.S.C. § 1252(b)(4)(B). Because "motive is a matter of fact, we review … for substantial evidence." *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 893 (9th Cir. 2021) (cleaned up).

Substantial evidence supports the agency's determination that Redin's past persecution was motivated not by political opinion, but by a desire to discourage business competition. Both the threatening phone calls he received after opening his catering company and the unknown attackers who physically assaulted him admonished that he close his restaurant, but never mentioned political opinion. "[This] evidence at most shows that [Redin] ha[s] been the victim of criminal activity

2

in Russia," not that he was harmed due to "political opinion." *See Bolshakov v. I.N.S.*, 133 F.3d 1279, 1281 (9th Cir. 1998) (cleaned up).

Regarding potential future persecution, substantial evidence also supports the agency's conclusion that Redin's police report neither expressed a political opinion nor will result in a political opinion being attributed to him. Although Redin testified that he shared the names of his suspected attackers with police, his signed statement does not include any names, and he could not confirm the identity of his attackers. Even if he had publicly named suspects, the agency reasonably understood his report as being directed "only against individuals whose corruption was aberrational," not "toward a governing institution," and therefore expressing an interest in legal vindication or self-preservation rather than "protected political opinion." *Khudaverdyan v. Holder*, 778 F.3d 1101, 1106 (9th Cir. 2015) (citations and internal quotation marks omitted); *see Rodriguez-Zuniga*, 69 F.4th at 1017 (explaining that "resisting a robbery" is not "expressing a political opinion" because "most people who resist criminal activity … do so for obvious non-political self-interested reasons"). And finally, as to imputed political opinion, the threatening phone call to Redina (after Redin filed his complaint with law enforcement) criticized only the fact that the report was made, not any political opinion expressed therein.

2. Nor did the agency err by rejecting Redin's and Redina's particular social groups (PSGs) for lacking, respectively, particularity and legal cognizability.

3

Particularity requires "a clear benchmark for determining who falls within the group, such that the relevant society has a commonly accepted definition of the group." *Macedo Templos v. Wilkinson*, 987 F.3d 877, 882 (9th Cir. 2021) (citation and internal quotation marks omitted). Regarding Redin's PSGs, the agency correctly observed that the meaning of the terms "law-abiding" and "independent" are unclear when dealing with criminal organizations and corrupt government institutions, and petitioners do not point to any evidence demonstrating that Russian society views these as distinct groups. *See id.*

As for Redina, petitioners failed to challenge and thus waived any argument about her PSG of "family members of a person being persecuted." *See Antonio v. Garland*, 58 F.4th 1067, 1072 n.7 (9th Cir. 2023) (finding the "claim waived" when the petitioner "offers no substantive argument"). Even if it was preserved, it is a "well-established principle that a particular social group must exist independently of the harm asserted." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1080 (9th Cir. 2020). Redina's PSG does not exist independently of the harm asserted and is thus impermissibly circular.

3. Substantial evidence also supports the agency's conclusion that petitioners lack a well-founded fear of future persecution based on their Pentecostal religion. While the country conditions evidence contains some passing incidents supporting the notion that Pentecostals are treated worse than the Orthodox majority in Russia,

4

such incidents are infrequent, merely discriminatory, and do not rise to the level of persecution. *See Rusak v. Holder*, 734 F.3d 894, 896 (9th Cir. 2013) (characterizing persecution as "an extreme concept that does not include every sort of treatment our society regards as offensive" (citation and internal quotation marks omitted)). Petitioners' pastor testified that Jehovah's Witnesses, Mormons, and Seventh Day Adventists, for example, are more immediately "in line" for mistreatment than Pentecostals. And although their pastor has stopped traveling to Russia due to fear of harm, he did travel there for a large Pentecostal conference in 2011 without incident. Taken together, these facts support a reasonable conclusion that petitioners do not face "an individualized risk" or "a pattern or practice" of religious persecution. *Gutierrez-Alm v. Garland*, 62 F.4th 1186, 1198 (9th Cir. 2023) (citation and internal quotation marks omitted).

Because petitioners failed to demonstrate (1) a nexus between past or future persecution and a political opinion, (2) a sufficiently particular or legally cognizable PSG, or (3) a well-founded fear of future religious persecution, substantial evidence supports the agency's denial of their claims for asylum and withholding.

4. Even assuming the CAT claim was not waived, substantial evidence supports the denial of relief. CAT claims require proof "that it is more likely than not" petitioners "would be tortured if removed to the proposed country … by or at the instigation of or with the consent or acquiescence of a public official or other

5

person acting in an official capacity." *Rodriguez-Zuniga*, 69 F.4th at 1023 (cleaned up).

First, petitioners' general commentary on the frequency of attacks on Russian businessmen does not prove that any link in the highly speculative chain of events supporting their fear of future torture is more likely than not to occur. Second, a "government does not acquiesce to torture where [it] actively, albeit not entirely successfully, combats the illegal activities." *Hussain v. Rosen*, 985 F.3d 634, 650 n.8 (9th Cir. 2021) (citation and quotation marks omitted). Here, the record suggests at least some willingness to help petitioners and rein in criminal activity. Police took Redin's statement and opened a criminal case, and even though no arrests were made, one of the named individuals—Vitalyii Kirienko—was arrested and imprisoned on other charges. For these reasons, substantial evidence supports the agency's conclusion that petitioners "did not demonstrate eligibility for protection under the CAT."

**PETITON DENIED.**