NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GONZALO CHAVEZ ESQUIVEL; MARIA DEL CARMEN GODOY TORRES; EDGAR ALEJANDRO CHAVEZ GODOY; NOE EDUARDO CHAVEZ GODOY; OSCAR MISAEL CHAVEZ GODOY; GONZALO ALEXIS CHAVEZ GODOY, Petitioners, v. PAMELA BONDI, Attorney General, Respondent. | No. 18-70983 Agency Nos. A098-293-481 A206-909-005 A206-909-006 A206-909-007 A206-909-008 A206-909-009 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 2, 2026
Seattle, Washington

Before: PAEZ, BEA, and BRESS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Gonzalo Chavez Esquivel ("Chavez Esquivel" or "Petitioner"), his wife,

Maria del Carmen Godoy Torres, and their four children, Edgar Alejandro Chavez

Godoy, Noe Eduardo Chavez Godoy, Oscar Misael Chavez Godoy, and Gonzalo

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Alexis Chavez Godoy (collectively, "Chavez Esquivel or Petitioners"), natives and citizens of Mexico, petition for review of the decision of the Board of Immigration Appeals ("BIA") dismissing their appeal of the Immigration Judge's ("IJ") order denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a)(1). We deny the petition.

**1.** Substantial evidence supports the agency's determination that Chavez Esquivel's proposed particular social group ("PSG") of "able-bodied males from La Ruana, Michoacán who are unable to leave La Ruana" is not cognizable. Given this finding, the agency properly denied Chavez Esquivel's applications for asylum and withholding of removal.

To qualify for asylum or withholding of removal, an applicant must show "persecution or a well-founded fear of persecution on account of . . . membership in a particular social group." *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021) (quoting 8 U.S.C. § 1101(a)(42)(A)). To be cognizable, a PSG must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020) (quoting *Matter of*

---

[1]     Chavez Esquivel is the lead petitioner. His wife and children are derivative beneficiaries of his asylum application.

*M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)). Although we review de novo whether a proposed PSG is cognizable, *Macedo Templos v. Wilkinson*, 987 F.3d 877, 879 (9th Cir. 2021), we review the agency's factual findings regarding particularity, immutability, and social distinction for substantial evidence, *Conde Quevedo*, 947 F.3d at 1242.

"[T]he 'social distinction' requirement considers whether those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some significant way." *Matter of M-E-V-G-,* 26 I. & N. Dec. at 238. Record evidence must "establish that a group exists and is perceived as 'distinct' or 'other' in a particular society." *Id.* at 244.

Substantial evidence supports the IJ's determination that Chavez Esquivel's proposed PSG lacks social distinction. While the record suggests that Chavez Esquivel's regional background is identifiable, it does not compel the conclusion that the proposed PSG of "able-bodied males from La Ruana, Michoacán, who are unable to leave La Ruana" is a "recognized component" of society. *Matter of M-E-V-G-,* 26 I. & N. Dec. at 239. For this reason, we deny the petition for review of Petitioner's asylum and withholding of removal claims.

**2.** We also deny the petition for review of Chavez Esquivel's CAT claim. "To qualify for CAT protection, a petitioner must show it is 'more likely than not he or she would be tortured if removed to the proposed country of removal.'"

3

*Sharma*, 9 F.4th at 1067 (quoting 8 C.F.R. § 208.16(c)(2)). "CAT's implementing regulations require the agency to consider 'all evidence relevant to the possibility of future torture.'" *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1089 (9th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(3)).

We reject Petitioners' argument that the agency failed to consider relevant evidence of country conditions. The IJ's finding that the Autodefensas were effectively deputized and corrupt was based on consideration of the country conditions evidence submitted by Petitioner. To this end, the IJ discussed the video documentary that Petitioner cited, which specifically concerned the regional groups Petitioner fears in Michoacán. The IJ also specifically recounted the situation between the Knights Templar and the Autodefensas as it related to Petitioner, including how the cartel tried to extort money from him and how Petitioner was recruited by the Autodefensas. The IJ further explained how the Autodefensas "have been deputized to some degree" by the Mexican government, while also recognizing that "it does appear that the Autodefensas themselves have become corrupt and in many instances may not be any more legitimate tha[n] the gangs that they oppose," such as Knights Templar.

The IJ's discussion of the record and determination that there was a possibility of torture but not a likelihood of "51 percent or greater" shows that the agency considered the country conditions evidence but disagreed with the

Petitioner's assessment of that evidence. Finally, the BIA stated that its decision was "[b]ased on the entirety of the record." Under our precedents, the agency need not "individually identify and discuss every piece of evidence in the record." *Hernandez v. Garland*, 52 F.4th 757, 770 (9th Cir. 2022). And "if nothing in the record reveals that the agency did not consider all the evidence, a general statement that the agency considered all evidence before it shall suffice." *Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025); *accord Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). Petitioner did not identify "particular evidence" that the agency "ignored or misstated" in a manner that caused him to suffer prejudice. *Cruz*, 146 F.4th at 740. Therefore, Petitioner failed to rebut the presumption that the agency acted "'properly and according to law' in reviewing the evidence before it." *Id.* at 739 (quoting *FCC. v. Schreiber*, 381 U.S. 279, 296 (1965)).

Substantial evidence also supports the agency's denial of CAT relief. While the record establishes a possibility that Chavez Esquivel will be tortured in Mexico, it does not compel the conclusion that it is more likely than not that he would be tortured. *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). Therefore, we deny the petition as to Chavez Esquivel's CAT claim.

**PETITION DENIED.**



*Chavez Esquivel v. Bondi,* No. 18-70983

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's denial of Chavez Esquivel's petition for review of his asylum and withholding of removal claims. But I respectfully dissent from the majority's holding that the agency did not err in denying CAT relief. Because the agency failed to engage with highly probative evidence that Chavez Esquivel will likely face torture in Mexico, I would grant the petition for review in part.

"To qualify for CAT protection, a petitioner must show it is 'more likely than not he or she would be tortured if removed to the proposed country of removal.'" *Sharma v. Garland*, 9 F.4th 1052, 1067 (9th Cir. 2021) (quoting 8 C.F.R. § 208.16(c)(2)). "CAT's implementing regulations require the agency to consider 'all evidence relevant to the possibility of future torture,' and we have reversed where the agency has failed to do so." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1089 (9th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(3)).

Chavez Esquivel fled La Ruana under fear of death threats from two violent groups engaged in ongoing armed conflict. The Knights Templar, which began as a vigilante group claiming to protect residents from criminal organizations, evolved into a violent drug trafficking organization that extorted residents and created armed barricades preventing entry and exit from La Ruana. The Autodefensas, another vigilante group, emerged to fight the Knights Templar and

established their own set of armed barricades in La Ruana. The Autodefensas were soon accused of corruption, extorting residents, and affiliating with cartels. Both groups threatened to kill Chavez Esquivel if he did not support them. The Knights Templar demanded monetary support. The Autodefensas demanded Chavez Esquivel and his eldest son join their armed fight against the Knights Templar.

Chavez Esquivel's substantial country conditions evidence establishes that both groups retaliate against perceived opponents. The Autodefensas detain and kill those "suspected" of affiliation with the Knights Templar, an approach "fraught with potential for . . . extrajudicial killings." Because he fled La Ruana rather than fight the Knights Templar, Chavez Esquivel is likely positioned as a perceived opponent to the Autodefensas. So too, it is well documented that the Knights Templar torture and murder those who do not comply with their demands—and Chavez Esquivel stopped paying extortion to the Knights Templar after fleeing La Ruana.

Chavez Esquivel also testified that "a lot" of his friends were tortured by the Autodefensas and Knights Templar. He described the Knights Templar's practice of "dismembering" and "publicly displaying" opponents' dead bodies to send a message to community members. And he testified that the whole town knew what happened to those who attempted and failed to escape La Ruana and were never seen again.

2

This testimonial and country conditions evidence establishes that Chavez Esquivel faces a significant risk of torture in Mexico. But the agency failed to discuss *any* of this evidence in denying CAT relief. A "CAT applicant may satisfy his burden with evidence of country conditions alone," and "[t]he failure of the IJ and BIA to consider" such evidence "constitutes reversible error." *Aguilar-Ramos v. Holder,* 594 F.3d 701, 705 (9th Cir. 2010). The IJ merely found, without explanation, that while "[t]here is a probability [of torture] . . . I do not believe it rises to the 51 percent possibility." The BIA dismissed Chavez Esquivel's appeal of the denial of his CAT claim without discussing any testimonial or country conditions evidence. The agency's failure to provide reasoned consideration to this highly probative evidence was legal error.

The majority contends that because the IJ acknowledged some of the country conditions evidence and the BIA stated that it considered the entire record, Petitioner's claim of legal error fails. I disagree. It is undisputed that "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence, a 'general statement that [the agency] considered all the evidence before [it]' may be sufficient." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011); *accord. Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025). "But, where there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include

3

misstating the record and failing to mention highly probative or potentially dispositive evidence." *Cole,* 146 F.3d at 771–72. Thus, a boilerplate statement is insufficient where the agency fails to engage with significant evidence supporting a petitioner's claim; rather, the agency must show its work.

The agency did not even attempt to show its work in this case. To emphasize, in finding Chavez Esquivel failed to establish a likelihood of torture, the IJ and BIA failed to discuss evidence that (1) the Autodefensas kill suspected opponents, (2) the Knights Templar publicly dismember, torture, and kill dissidents to send a message, (3) many of Chavez Esquivel's friends were in fact tortured by the Autodefensas and the Knights Templar due to perceived infractions, and (4) community members who unsuccessfully attempted to escape were "never seen again." This is plainly "highly probative" evidence. *Cole,* 659 F.3d at 772. I cannot construe the agency's decision—which did not mention any of this evidence, let alone explain how it was insufficient to establish a likelihood of torture—as in fact providing "reasoned consideration" to this evidence, as our precedents require. *Id.*

We are left in the dark as to how the agency found Chavez Esquivel's risk of torture insufficient to qualify for CAT relief. In my view, the better explanation for the agency's lack of analysis of the ample contrary evidence is that the agency simply "ignored" it or did not adequately consider it. *Cruz,* 146 F.4th at 740.

4

For these reasons, I would grant the petition in part and remand to permit the agency to evaluate Chavez Esquivel's likelihood of torture upon reasoned consideration of "all" relevant evidence, as CAT's implementing regulations and this court's precedents require.

For the above reasons, I respectfully dissent.