**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUSTIN STEEVEN SANTOS-PONCE,
*Petitioner*,

v.

ROBERT M. WILKINSON, Acting
Attorney General,
*Respondent*.

No. 18-72433

Agency No.
A206-794-496

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 1, 2021*
Pasadena, California

Filed February 10, 2021

Before: Ronald M. Gould, John B. Owens, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Immigration

Denying Justin Steeven Santos-Ponce's petition for review of the Board of Immigration Appeals' denial of asylum and related relief, the panel held that Ponce's proposed social group comprised of "minor Christian males who oppose gang membership" is not cognizable, and that he failed to establish the requisite nexus between any harm and his membership in the Santos-Ponce family, or that he would more likely than not be tortured by the Honduran government or with government acquiescence.

Addressing Ponce's first proposed social group comprised of "minor Christian males who oppose gang membership," the panel concluded that the group is not cognizable because it lacks particularity and social distinction. Noting that this court previously rejected a similar social group in *Ramos-Lopez v. Holder*, 563 F.3d 855 (9th Cir. 2009) (concluding that young Honduran men who resisted gang recruitment lacked particularity and social distinction), *abrogated in part on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc), the panel explained that the record does not show how adding the term "Christian" to minors who oppose gang membership makes the group sufficiently particular or socially distinct. The panel wrote that the record lacked persuasive evidence that there is a viable risk of persecution in Honduras based on one's Christian religious beliefs or

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

practices, and the evidence does not compel the conclusion that Honduran society would distinguish between a young Christian male who resists gang recruitment and any other young man who seeks to avoid gang membership.

Regarding Ponce's second proposed social group comprised of members of "the Santos-Ponce family," the panel concluded that the record did not contain evidence of a nexus between the alleged persecution and his membership in the Santos-Ponce family. The panel explained that while Ponce's uncle was killed by gang members, the record did not contain any evidence that his uncle's family membership was one central reason or even a reason that the gang killed him. In addition, the panel concluded that Ponce's claim of future persecution was undermined by the fact that he has other family members living unharmed in Honduras.

The panel also held that substantial evidence supported the Board's conclusion that Ponce was not eligible for CAT protection. The panel wrote that the agency correctly observed that Ponce failed to claim any past harm, let alone torture, and that his uncle's killing, for unspecified reasons, combined with the existence of generalized violence in Honduras, did not compel the conclusion that, upon his return to Honduras, Ponce would more likely than not experience torture inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity.

## COUNSEL

Carolina Celina Gomez and Mher Cholakhyan, Law Office of Carolina C. Gomez, Los Angeles, California, for Petitioner.

Joseph H. Hunt, Assistant Attorney General; Carl McIntyre, Assistant Director; Nancy Ellen Friedman, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

VANDYKE, Circuit Judge:

### I.

Justin Steeven Santos-Ponce (Ponce) petitions for review of the Board of Immigration Appeals' (BIA) order dismissing his appeal of an Immigration Judge's (IJ) decision denying his applications for asylum and withholding of removal and request for protection under the Convention Against Torture (CAT). For the reasons discussed below, we deny the petition for review.

### II. Factual and Procedural Background

Ponce is a 16-year-old native of Honduras who was placed in removal proceedings soon after he arrived in the United States in 2014. Ponce initially lived with his mother in Honduras until he was three years old. When his mother moved to the United States, three-year-old Ponce went to live with his grandmother, uncle, and other extended family members in Honduras.

When Ponce was five years old, his uncle was killed by gang members.  The record contains conflicting evidence about why his uncle was killed.  One part of the record says that his uncle was killed for unknown reasons, but elsewhere it says that Ponce's uncle was killed when his grandmother did not meet the gang's demands.  Ponce himself never directly experienced any physical harm or threats of harm while he lived in Honduras.  And even though he is fearful of returning to Honduras because of the crime rate and gang activities generally, his grandmother and other family members continue to live in the country unharmed.

## A.  IJ Decision

The IJ found Ponce's testimony credible, and while Ponce did not suffer past persecution, the IJ determined that he had a subjective fear of harm.  But the IJ also concluded that Ponce failed to show that he would suffer future harm based on a protected ground.  Specifically, the IJ rejected Ponce's argument that he had a well-founded fear of future persecution because of or on account of being a Christian and being a member in two proffered particular social groups (PSGs):  (1) "Santos-Ponce family who have been victims of gang violence"; and (2) "minor Christian males who oppose gang membership."

The IJ acknowledged that Ponce had been raised a Christian, but determined that "the evidence does not support a finding that [Ponce] faces either a particularized risk of persecution as a Christian or that there is a pattern or practice of persecution of Christians."  While the record contains evidence of "the problem of gang related recruitment of children and the general gang warfare and violence" in Honduras, the IJ reasoned that the record lacks "persuasive evidence that [there is] a viable risk of

persecution based on one's Christian religious beliefs or practices."

With respect to Ponce's first proposed PSG—"Santos-Ponce family who have been victims of gang violence"—the IJ concluded that Ponce inappropriately defined the group by the harm suffered. But even if defining the group by the harm suffered was not impermissibly circular, the IJ explained that Ponce "would not qualify as a member of the group" because he has not been a victim of gang violence. Redefining Ponce's proposed PSG by family relationship rather than harm suffered, the IJ nonetheless determined that Ponce failed to "show[] that he faces a well-founded fear of harm as a member of his family." At the time of the IJ hearing, Ponce had family members that continued to live unharmed in Honduras. The IJ thus concluded that the record does not "show that [Ponce] faces a particularized risk of harm" as a result of his family membership.

Regarding Ponce's second proposed PSG—"minor Christian males who oppose gang membership"—the IJ determined Ponce did not "show that the group is sufficiently socially distinct or particular." Although the record shows that gangs targeted some children for recruitment or violence, the IJ determined that "the evidence does not support a finding that the respondent's proposed group is socially distinct" because gang violence and recruitment are "complex problem[s] . . . driven by a mixture of motives." The IJ also observed that the record does not clearly define what constitutes opposition to gang violence or explain the significance of the additional label "minor Christian male[s]," and it fails to show "how the combination would be recognized as socially distinct." Therefore, the IJ concluded that this proposed PSG was not cognizable.

Ultimately, the IJ decided that because Ponce's "fears are more akin to fears of general civil strife created by the gang problems in Honduras[,]" these "fears . . . fail to meet the standard for asylum." And because he failed to meet the lesser burden of proof required for asylum, the IJ concluded that Ponce also failed to meet his burden of proof for withholding of removal. Ponce was not entitled to CAT relief, according to the IJ, because there was no evidence that he was tortured in the past or that he would be tortured in the future "by any government officials, or anyone acting under the acquiescence of the government."[1]

## B.  BIA Decision

The BIA affirmed the denial of Ponce's asylum, withholding of removal, and CAT claims, and dismissed his appeal.

The BIA concluded that the IJ did not clearly err when she determined that Ponce failed to "establish a nexus to a protected ground . . . , including membership in a [PSG], or demonstrate that it was or will be at least one central reason for the claimed persecution." Similarly, with respect to Ponce's request for withholding of removal, the BIA determined that Ponce "failed to establish that it is more likely than not that he would be targeted for persecution on account of a protected ground."

Similar to his claims before the IJ, Ponce argued before the BIA that he would be targeted for persecution on account

---

[1] The IJ held her decision in abeyance to give Ponce an opportunity to apply for an immigrant visa under the Special Immigrant Juvenile Status (SIJS) application, but Ponce's counsel informed the IJ on June 12, 2017 that Ponce was "reunited with his biological father and was no longer eligible for relief based on an SIJS application."

of and because of his membership in two proffered PSGs: (1) "minor Christian males who oppose gang membership"; and (2) as a member of "the Santos-Ponce family."

The BIA agreed with the IJ that his first proposed PSG—"minor Christian males who oppose gang membership"—"is not defined with sufficient particularity and it has not been shown to be socially distinct within Honduran society so as to constitute a cognizable [PSG]."

Regarding his second proposed PSG, the BIA assumed—without deciding—that Ponce's "family is a cognizable social group," but concluded that the record did not show that Ponce's "family relationship itself was 'one central reason' or constituted 'a reason' the gang would have targeted [Ponce's] family and specifically, [his] uncle." Importantly, "any inference of a nexus between the gang's actions with respect to [Ponce's] uncle and [Ponce's] familial relationship is undermined by the fact that other family members continue to reside in Honduras without any known issues with the gang."

The BIA also determined there was no clear error in the IJ's "assessment of the facts which support her conclusion that [Ponce] has not established his eligibility for protection under [CAT]." Ponce failed to meet "the burden of demonstrating that it is more likely than not that he would be subjected to torture inflicted by or at the instigation of or with the consent or acquiescence of an official or other person acting in an official capacity."

### III. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252. "Whether a group constitutes a [PSG] . . . is a question of law we review de novo." *Perdomo v. Holder*, 611 F.3d 662, 665

(9th Cir. 2010) (citation omitted). In contrast, whether an applicant has shown that his persecutor was or would be motivated by a protected ground—*i.e.*, whether the "nexus" requirement has been satisfied—is reviewed under the substantial evidence standard. *See Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009). Under this deferential standard, factual findings are treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Singh v. Lynch*, 802 F.3d 972, 974 (9th Cir. 2015). Accordingly, in order to reverse the BIA's finding under substantial evidence review, "we must find that the evidence not only *supports* that conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

## IV. Discussion and Analysis

Regarding his asylum and withholding of removal claims, Ponce argues before this court, like he did before the BIA, that he would be targeted for persecution on account of his membership in two proffered PSGs: (1) "minor Christian males who oppose gang membership" and (2) members of the Santos-Ponce family.

The BIA properly concluded that Ponce's first proposed PSG—"minor Christian males who oppose gang membership"—is not sufficiently particular or socially distinct. We have previously determined that a very similar PSG fails. *See Ramos-Lopez v. Holder*, 563 F.3d 855, 861–62 (9th Cir. 2009) (concluding that young Honduran men who resisted gang recruitment "failed the particularity requirement" and "lacked the requisite social visibility"), *abrogated in part on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1093 (9th Cir. 2013) (en banc). The record does not show how adding the term "Christian" to minors who oppose gang membership makes the group

sufficiently particular or socially distinct. The record lacks "persuasive evidence that [there is] a viable risk of persecution based on one's Christian religious beliefs or practices," and the evidence does not compel the conclusion that Honduran society would distinguish between a young Christian male who resists gang recruitment and any other young man who seeks to avoid gang membership.

Regarding Ponce's second proposed PSG—members of "the Santos-Ponce family"—the record does not contain evidence of a nexus between the alleged persecution and his membership in the Santos-Ponce family. *See Lkhagvasuren v. Lynch*, 849 F.3d 800, 802 (9th Cir. 2016) ("The petitioner has the burden to prove that a nexus exists between the persecution and a protected ground."). While Ponce's uncle was killed by gang members, the record does not contain any evidence that his uncle's membership in the Santos-Ponce family was one central reason or even a reason that the gang killed him. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (observing that where "there was no nexus at all," we draw "no distinction between the 'one central reason' phrase in the asylum statute and the 'a reason' phrase in the withholding statute"). In addition, Ponce's claim of future persecution is undermined by the fact that he has other family members living unharmed in Honduras.**[2]** Because Ponce failed to establish a nexus between the alleged persecution and his proposed PSG based on his familial relation, the record does not compel us to reverse the BIA.**[3]**

---

**[2]** *See Estrada v. INS*, 775 F.2d 1018, 1022 (9th Cir. 1985) ("The absence of harassment of an alien's family tends to reduce the probability of persecution.").

**[3]** Given the lack of nexus, we need not address in this case whether Ponce's proposed PSG consisting of members of the Santos-Ponce

As a result, the BIA's determination that Ponce did not merit asylum is supported by substantial evidence.**[4]**

Lastly, substantial evidence supports the BIA's conclusion that Ponce is not eligible for CAT protection. To qualify for CAT protection, Ponce bears the burden of proving "that 'it is more likely than not that … [he] would be tortured if removed to the proposed country of removal.'" *Azanor v. Ashcroft*, 364 F.3d 1013, 1018 (9th Cir. 2004) (first alteration in original) (quoting 8 C.F.R. § 208.16(c)(2)). The record does not contain evidence compelling a conclusion different from the BIA's. The BIA correctly explained that the IJ did not err by observing that "[t]here is no claim or evidence that [Ponce] was harmed, much less tortured in the past by any government officials, or anyone acting under the acquiescence of the government." And the fact that Ponce's uncle was killed for unspecified reasons, combined with the existence of generalized violence in Honduras, does not compel the conclusion that, upon his return to Honduras, Ponce would more likely than not experience torture "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official … or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2021); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam) ("Petitioners' generalized evidence of violence and crime in Mexico is not particular to Petitioners and is insufficient to meet [the CAT]

---

family is cognizable. *See Matter of L-E-A-*, 27 I. & N. Dec. 581, 581, 584 (2019).

**[4]** Because Ponce "fail[ed] to satisfy the lower standard of proof required to establish eligibility for asylum," substantial evidence supports the BIA's conclusion that he "fail[ed] to demonstrate eligibility for withholding of deportation." *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000).

standard."). Substantial evidence supports the BIA's conclusion that Ponce failed to demonstrate eligibility for CAT relief.

The petition for review is **DENIED**.