**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALONDRA Y. CARRANZA MORENO, | No. 19-71379 |
| Petitioner, | Agency No. A215-816-116 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 9, 2021
San Francisco, California

Before:  BERZON, CHRISTEN, and BADE, Circuit Judges.

Alondra Y. Carranza Moreno, a native and citizen of Mexico, petitions for

review of the decision of the Board of Immigration Appeals ("BIA") affirming an

immigration judge's ("IJ") denial of her applications for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT").  We have

jurisdiction under 8 U.S.C. § 1252 and deny the petition.

---

        *      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

We apply de novo review to questions of law, and we review factual findings for substantial evidence. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). Under the substantial evidence standard, the agency's findings are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citation omitted).

1. To establish entitlement to asylum, an applicant must show either past persecution or a fear of future persecution. *Madrigal v. Holder*, 716 F.3d 499, 503 (9th Cir. 2013). An applicant who alleges past persecution must show "that (1) [her] treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Id.* (citation omitted). The record does not compel the conclusion that the BIA erred in determining that Carranza failed to show she suffered past persecution based on a statutorily protected ground. *See* 8 U.S.C. § 1101(a)(42)(A).

Although Carranza did not clearly articulate a statutorily protected ground in her asylum application, the IJ analyzed her asylum claim based on membership in the particular social groups of family members of Carranza's mother, or siblings of her stepfather's children. Carranza asserts that she suffered past persecution because her stepfather hit her one time when she was sixteen years old, he

2

allegedly killed her mother after previously threatening to do so, he contacted her through social media and sent her photos in which he was holding a gun and photos of her mother in a casket, and her stepfather's daughter told Carranza that her stepfather would take his children (Carranza's half-siblings)—who were staying with relatives of Carranza's mother after her death—on "bad terms." Nothing in the record compels the conclusion that these incidents were connected to Carranza's status as a member of either her mother's family or siblings of her stepfather's children. *See Ayala v. Holder*, 640 F.3d 1095, 1097 (9th Cir. 2011) (explaining that applicant seeking asylum "must establish that any persecution was or will be *on account of* his membership" in a particular social group (citation omitted)).

Carranza testified that her stepfather killed her mother, but she also testified that he was motivated by jealousy and a desire to control Carranza's mother and that his later actions were motivated by his desire to gain custody of his children. Thus, Carranza did not show that harm to a family member—her mother—was part of a "pattern of persecution" that was "closely tied to" her. *Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009) (citation omitted). Additionally, members of her mother's family (including Carranza's grandparents, aunts, uncles, and several of her siblings) have remained in Mexico without incident—beyond unfulfilled threats—which suggests that there is no nexus between any form of persecution

3

that Carranza has faced and her status as a member of her mother's family or siblings of her stepfather's children. *See Santos-Ponce v. Wilkinson*, 987 F.3d 886, 890–91 (9th Cir. 2021). Accordingly, the record does not compel the conclusion that there was a nexus between the past harm Carranza alleged and a statutorily protected ground. Thus, substantial evidence supports the BIA's conclusion that Carranza did not establish past persecution.

When an applicant fails to establish past persecution, she must prove "both a subjective fear of future persecution and an objectively 'reasonable possibility' that [she] will be persecuted upon return to the country in question." *Recinos de Leon v. Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2005) (quoting 8 C.F.R. § 1208.13(b)(2)(i)(A)–(B)). To make these showings, an applicant must demonstrate that she subjectively and reasonably "fear[s] persecution by [the] government, or forces [the] government is unable or unwilling to control." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1064–65 (9th Cir. 2003).

The BIA concluded that Carranza failed to show "that any feared future harm would be inflicted either by the Mexican government or by persons or an organization that the government is unable or unwilling to control." Following the killing of Carranza's mother, the Mexican police pursued Carranza's stepfather because he shot a gun outside Carranza's home, and the police captured him after engaging in a shootout that left him injured and his son dead. *See Nahrvani v.*

4

*Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005) (concluding that police action in response to applicant's "reports of mistreatment" supported determination that government was not unable or unwilling to control persecutors). The Mexican government then detained Carranza's stepfather for a year until his release after a trial related to charges that he killed Carranza's mother. Substantial evidence therefore supports the BIA's conclusion that the Mexican government is not unable or unwilling to control Carranza's stepfather. Because the BIA held that the government was not "unable or unwilling to control" any future private persecution, we do not reach Carranza's argument that the BIA also erred in evaluating the Mexican government's actions under another, more stringent standard than the unable-or-unwilling standard.

2. To establish eligibility for withholding of removal, an applicant must show an unrebutted presumption of fear of future persecution, arising from proof of past persecution or, in the absence of past persecution, a "clear probability of future persecution." *Tamang v. Holder*, 598 F.3d 1083, 1091 (9th Cir. 2010) (citation omitted). The "clear probability of persecution" standard for withholding of removal is "more stringent" than the "well-founded fear of persecution" standard for asylum. *Mansour v. Ashcroft*, 390 F.3d 667, 672–73 (9th Cir. 2004); *see also Barajas-Romero v. Lynch*, 846 F.3d 351, 357–60 (9th Cir. 2017) (describing applicable standard). Because the BIA concluded that Carranza did not

establish eligibility for asylum, it necessarily found her ineligible for withholding of removal. *See Mansour*, 390 F.3d at 672–73. Thus, substantial evidence supports the BIA's denial of Carranza's application for withholding of removal.

3. We do not consider Carranza's assertion that the BIA erred in failing to evaluate whether Carranza faced past persecution or fears future persecution based on "her membership in the [particular social group] of Mexican women, or single Mexican women without the protection of a father." Carranza did not exhaust this claim before the agency. *See Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1084 (9th Cir. 2020) (observing that courts need not mechanistically analyze proposed social groups, but neither may petitioners reframe their proposed social groups on appeal).

4. Substantial evidence supports the BIA's denial of Carranza's CAT claim because the record—in particular, the government's response to Carranza's stepfather's actions—does not compel the conclusion that it is more likely than not that Carranza will suffer torture inflicted or instigated by the Mexican government or with its acquiescence, including future threats or harm to Carranza from her stepfather. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1)–(2); *Nahrvani*, 399 F.3d at 1154. Carranza also asserts, however, that she will be at risk from men other than her stepfather as a "single female deportee" because "Mexican culture [is] steeped in . . . a machismo that is exacerbated by and glorified by cartels." But

6

Carranza specifically testified that she is not "afraid" of anyone or anything in Mexico other than her stepfather. Therefore, the record supports that Carranza does not face a "*particularized threat* of torture" from the cartels. *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam) (citation omitted).

5.      Finally, we reject Carranza's contention that the BIA and IJ failed to review all the evidence relevant to her CAT claim. The BIA's "catchall phrase" that it reviewed the record is sufficient because "[t]here is no indication that the IJ or BIA did not consider all the evidence before them." *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 894 (9th Cir. 2018) (citation omitted). The IJ cited Carranza's testimony and evidence in the record. The BIA independently analyzed the issues and cited law that the IJ did not cite. Thus, there is no indication that the IJ and BIA did not review all the evidence in the record, and the BIA's general statement that it reviewed the record is sufficient.

**PETITION DENIED.**