**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FLOR ESTER CRUZ LOPEZ; BRAYAN ERNESTO MOLINA CRUZ; Y.S.M.C., a Juvenile Male; J.M.M.C., a Juvenile Male,* | No. 19-71215 |
| Petitioners, | Agency Nos. A206-758-880 A206-758-881 A206-758-882 A206-758-883 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM** |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 5, 2021
Pasadena, California

Before: MILLER and LEE, Circuit Judges, and HILLMAN,*** District Judge.
Partial Concurrence and Partial Dissent by Judge LEE

---

\* The Board of Immigration Appeals' order hyphenates petitioners' last names and lists Brayan Ernesto Molina Cruz as "Brayon Molina-Cruz." The Clerk will update the docket as indicated to accurately reflect petitioners' names.

\** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*** The Honorable Timothy Hillman, United States District Judge for the District of Massachusetts, sitting by designation.

Flor Cruz Lopez and her three sons, Brayan Molina Cruz, Y.S.M.C., and J.M.M.C, natives and citizens of El Salvador, seek review of an order of the Board of Immigration Appeals dismissing their appeal from an immigration judge's denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture. We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we grant the petition in part and deny the petition in part.

1. The Board correctly concluded that certain of petitioners' proposed particular social groups are not cognizable. We review the cognizability of a particular social group de novo, *Barbosa v. Barr*, 926 F.3d 1053, 1059 (9th Cir. 2019), and the agency's underlying factual findings for substantial evidence, *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020). The Board correctly reviewed the immigration judge's underlying factual findings for clear error, and we see no indication that the Board failed to consider the ultimate question of each group's cognizability de novo, as petitioners contend. *See* 8 C.F.R. 1003.1(d)(3)(i)–(ii).

The proposed social group of "Salvadoran women viewed as property by gang members" lacks particularity and social distinction. The group lacks particularity because it has no clear benchmark for determining which past or prospective female victims of gangs belong to the group. *See Nguyen v. Barr*, 983 F.3d 1099, 1103 (9th Cir. 2020); *Matter of W-G-R-*, 26 I. & N. Dec. 208, 214

(B.I.A. 2014). It also lacks social distinction because it is defined solely by reference to the persecutor's perception, which "is not itself enough to make a group socially distinct." *Cordoba v. Barr*, 962 F.3d 479, 482–83 (9th Cir. 2020) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (B.I.A. 2014)).

Likewise, the proposed social groups of "Salvadoran women without the protection of a male spouse or partner" and "Salvadoran boys without the protection of a father" lack particularity and social distinction. As to particularity, the concept of "protection" is amorphous and subjective. *See Matter of S-E-G-*, 24 I. & N. Dec. 579, 585 (B.I.A. 2008). As to social distinction, the anecdotal evidence cited by petitioners does not compel the conclusion "that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Garay Reyes v. Lynch*, 842 F.3d 1125, 1131 (9th Cir. 2016) (emphasis omitted) (quoting *W-G-R-*, 26 I. & N. Dec. at 217). Nor does the fact that community members might know their neighbors' living situation speak to whether society views the groups as distinct. And because "the persecutor's perception is not itself enough to make a group socially distinct," the fact that members of these groups are more likely to be targeted by gangs, if true, is not sufficient to establish that they are socially distinct. *Cordoba*, 962 F.3d at 482–83 (internal quotation marks omitted).

Assuming without deciding that the agency erred in discounting Dr.

3

Boerman's testimony about petitioners' proposed social groups for lacking corroboration in the record, *see Castillo v. Barr*, 980 F.3d 1278, 1283–84 (9th Cir. 2020), the agency's conclusions are supported by the independent reasons discussed above.

2.      Substantial evidence supports the Board's conclusion that Cruz Lopez did not establish a nexus between her feared persecution and her familial relationship to her nephew. *See Santos-Ponce v. Wilkinson*, 987 F.3d 886, 890 (9th Cir. 2021) (standard of review). As the Board concluded, there is no evidence that gang members knew of Cruz Lopez's relation to her nephew or that Cruz Lopez was targeted or will be targeted on account of that relationship.

3.      Substantial evidence does not support the Board's conclusion that Molina Cruz, Y.S.M.C., and J.M.M.C. failed to establish a nexus between their feared persecution and their familial relationship to their mother, Cruz Lopez. The Board did not consider relevant mixed-motive evidence, including Cruz Lopez's credited testimony that gang members threatened to kill her sons on multiple occasions, regularly trespassed into the home where Cruz Lopez lived with her sons, and expressly referenced Cruz Lopez in threats to Molina Cruz. *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1023–24 (9th Cir. 2010). Nor did the Board consider Dr. Boerman's testimony that the gang's victimization of Molina Cruz's was likely based on his relationship to Cruz Lopez, or Dr. Boerman's

4

testimony that the sons are at risk of future harm due to their relationship to Cruz Lopez. We therefore remand to the Board to reconsider whether the sons' relationship to Cruz Lopez is "a central reason" or at least "a reason" for their persecution in light of the record as a whole. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

4.      Substantial evidence does not support the Board's conclusion that Molina Cruz failed to establish a nexus between his feared persecution and his imputed membership in the particular social group of "Salvadoran homosexuals." As the Board recognized, gang members "used sexual orientation . . . as a means to degrade and harass [Molina Cruz]." And Molina Cruz presented ample evidence that gang members targeted him on account of his perceived sexual orientation, including that gang members regularly used homophobic slurs when attacking him and that they sexually molested him while stating "they knew it was what [he] liked since [he] liked men." *See Li v. Holder*, 559 F.3d 1096, 1111–12 (9th Cir. 2009) ("Persecutors' motivation should not be questioned when the persecutors specifically articulate their reason for attacking a victim."). According to Dr. Boerman, gang members often sexually molest individuals they perceive to be gay. Thus, the record compels the conclusion that Molina Cruz's perceived sexual orientation was both "a central reason" and "a reason" for his persecution. *See Tapia Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013); *Antonyan v. Holder*,

5

642 F.3d 1250, 1255–56 (9th Cir. 2011).

5. Substantial evidence does not support the Board's denial of petitioners' claims under the Convention Against Torture for failure to demonstrate government acquiescence. *See Akosung v. Barr*, 970 F.3d 1095, 1104 (9th Cir. 2020). The Board failed to consider Cruz Lopez's credible testimony that the police told her they could not help her and hung up on her when she called to report the gang's extortionate demand and threats. Nor did the Board consider her testimony that the police were willfully blind to gang activity and cooperated with gangs. Although Cruz Lopez did not report later attacks to the police, she explained that she did not do so because the police "never helped [her] even when [she] needed their help." Because the Board failed to consider this pertinent testimony, we remand for reconsideration of petitioners' application for relief under the Convention. *See Quiroz Parada v. Sessions*, 902 F.3d 901, 914–16 (9th Cir. 2018); *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011).

6. The Board correctly rejected petitioners' due process claim based on the loss of the record for one of the six days of the removal hearing. Because the immigration judge gave the witnesses an opportunity to re-testify and alternatively offered to rely on their written declarations, the loss of the record did not render the proceedings "fundamentally unfair." *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020). Nor have petitioners shown "[s]ubstantial prejudice." *Id.*

6

**PETITION GRANTED in part, DENIED in part, and REMANDED.**

Costs shall be taxed against the respondent.

*Cruz Lopez v. Garland*, No. 19-71215
LEE, Circuit Judge, concurring-in-part and dissenting-in-part.

Flor Cruz Lopez and her three sons, Brayan Molina Cruz, Y.S.M.C., and J.M.M.C have suffered tremendously at the hands of the gangs in El Salvador. I agree with the majority that we should remand the Board of Immigration Appeal's (BIA) denial of Convention Against Torture protection. But I believe that substantial evidence supports the BIA's determination that (1) no nexus existed between the three sons' feared persecution and their mother, and (2) Brayan Molina Cruz failed to establish a nexus between his feared persecution and his imputed membership in the particular social group of "Salvadoran homosexuals." I therefore respectfully dissent on those two nexus issues.

1. The majority says that the BIA did not consider mixed-motive evidence suggesting that the gang targeted the sons because of their relationship with their mother. But I believe that the record reflects that the BIA considered and rejected this evidence. The BIA found that "the co-respondents did not establish that their familial relationship to their mother was or will be **'at least one central reason'** for the claimed prosecution." *Cf.* 8 U.S.C. § 1158(b)(1)(B)(i) (stating that in mixed-motive cases, the applicant must establish that "race, religion, nationality, membership in a particular social group, or political opinion, was or will be **at least one central reason** for persecuting the applicant") (emphasis added). The BIA then listed the different pieces of evidence that the IJ considered, including both the oldest

child's testimony and the fact that "gang members were also independently attacking and threatening the co-respondents' mother . . . after she was unable to pay the extortion fees they demanded." The BIA noted that after "considering the totality of the evidence," the IJ had found that the harm the eldest son experienced was not sufficiently related to their relationship with their mother. To reach that conclusion, the IJ "considered the eldest co-respondent's testimony that the harm he encountered from the gangs *began after* he refused their recruitment efforts." Put differently, the son was not attacked after the gangs threatened his mother; he was attacked after he rejected their recruitment efforts. I thus believe that a fair reading of the BIA's opinion shows that the BIA considered and rejected the mixed-motive argument.

2. Gang members use unsavory tactics to recruit new members, including degrading those who refuse to join the gang. The IJ and BIA found that the gang members engaged in horrendous homophobic slurs and harassed Molina Cruz because he refused to join the gang, not because they perceived him to be gay. The record does not compel a contrary conclusion.

The majority emphasizes Molina Cruz's testimony that gang members sexually molested him while stating "they knew it was what [he] liked since [he] liked men." But in the very next sentence, Molina Cruz said that the gang "said all this because to them, you were gay if you would not join a gang and that was how gay men would be treated." This testimony suggests that the gang members — in a

fit of misguided machismo — used homophobic slurs because they believed such degrading name-calling would pressure Molina Cruz into joining the gang. Similarly, on direct examination, the eldest son was asked, "And how often would they approximately call you these [homophobic] names?" Answer: "Every time I refused to join the gang." Indeed, in front of the IJ, petitioners argued that gang members targeted Molina Cruz "because of his unwillingness to join the gangs." The IJ/BIA's conclusion flows naturally from Molina Cruz's own testimony. We are therefore not compelled to find otherwise. *See Zheng v. Holder*, 644 F.3d 829, 835 (9th Cir. 2011)

I thus respectfully dissent from the majority's holding on the two nexus determinations.