NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 27 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KAREN VERGARA SOTO; LUIS
FELIPE SOTO,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 21-1095

Agency Nos.   A216-531-753
A216-531-754

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 9, 2023
San Francisco, CA

Before: FRIEDLAND and R. NELSON, Circuit Judges, and KATZMANN**,
Judge.
Dissent by Judge R. NELSON.

Petitioner, Karen Vergara Soto, a native and citizen of Colombia,

petitions this court for review of an order of the Board of Immigration Appeals

(BIA) upholding the denial by the Immigration Judge (IJ) of her application for

asylum and withholding of removal.  Her husband, Luis Felipe Soto, was

---

\*      This disposition is not appropriate for publication and is not
precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Gary S. Katzmann, Judge for the U.S. Court of
International Trade, sitting by designation.

included on her application as a derivative. We grant the petition and remand her asylum and withholding of removal claims to the agency for further consideration.

The BIA concluded that the harm Vergara Soto experienced did not rise to the level of persecution and that she lacked a well-founded fear of persecution on account of a protected ground because, even if her proposed particular social groups (PSGs) were cognizable, she had not demonstrated a nexus between them and the potential future harm. It did not evaluate, however, all of Vergara Soto's proposed PSGs—specifically, it failed to evaluate her claims with respect to the social group of her family.[1]

Prior to her hearing before the IJ, Vergara Soto had defined three PSGs: daughters of a wealthy business owner, granddaughters of a wealthy landowner, and wealthy, fair-skinned young females. During her hearing, she added two additional groups: relative of wealthy business owner and relative of wealthy landowner. She explained that some of her evidence was in relation to "the particular social group of the family related to the business and the wealthy landowner." Vergara Soto indicated, by use of the term "the family," that she was referring narrowly to relatives of a specific wealthy business owner (her

---

[1] Although Vergara Soto's brief to our court could have been clearer, we disagree with the dissent that the brief failed to identify this error altogether. The brief argues that the IJ misunderstood the family-membership basis for Vergara Soto's PSG and that the IJ did not consider the proper evidence as a result.

21-1095

father) and relatives of a specific wealthy landowner (her grandfather)—*i.e.*, to the Vergara family.  But the IJ interpreted these PSGs generally, as if to mean relatives of any wealthy business owner or landowner.  The IJ rejected the group as not cognizable because "the characteristic of wealth or affluence is simply too subjective, inchoate, and variable," indicating that the IJ understood "wealthy" as the operative characteristic defining the new PSGs rather than as a mere descriptor of PSGs more concretely defined by familial ties.  The IJ thus considered neither the cognizability of nor nexus to a family-specific group.

Vergara Soto reaffirmed her intended meaning of the new PSGs in her appeal to the BIA, but the BIA ignored the family-based argument.  In her briefing, she referred to her "membership in a Particular Social Group based on her family membership" and discussed characteristics of the Vergara family and why they were targeted.  The BIA, however, adopted the list of PSGs the IJ had considered and held that the IJ "properly found these claimed particular social groups, all of which are defined in part by the respondent's wealth, are not cognizable."

Where the agency fails to consider a protected ground raised by the petitioner or fails to "conduct its particular social group analysis with respect to the correct group," remand is warranted.  *Antonio v. Garland*, 58 F.4th 1067, 1076 (9th Cir. 2023).  Even if Vergara Soto's proposed PSGs "evolved somewhat, and she could have been clearer in her various presentations," the IJ and BIA were not free to ignore her arguments that she was being targeted

because of who her family was. *Id.* at 1075 n.13. On remand, the agency should consider in the first instance whether the family-specific groups are cognizable and whether Vergara Soto's feared future harm would be on account of her being related to her father and grandfather—the wealthy land and business owners relevant here—rather than being related to land or business owners generally.[2]

**PETITION GRANTED AND REMANDED.**

---

[2] Because the agency did not consider the nexus to a family-specific protected ground, its holding that there was no nexus to the generally defined PSGs does not foreclose relief. The agency may have disregarded certain facts that would be relevant only in evaluating the nexus to the family-specific groups.

*Soto v. Garland*, No. 21-1095

R. NELSON, Circuit Judge, dissenting:

The majority concludes that the IJ failed to address one of Petitioner Karen Vergara Soto's PSGs: the Vergara family. In my view, this conclusion founders for two reasons. First, Vergara Soto never argues in her opening brief that the IJ failed to address this family-specific PSG. Second, even if she made this argument, Vergara Soto did not articulate a family-specific PSG before the IJ. For these reasons, and because substantial evidence supports the agency's denial of asylum and withholding of removal, I would deny the petition.

Vergara Soto's opening brief argues that the agency erred in three ways: (1) by failing to address the harm her family members experienced; (2) by concluding that she did not establish a nexus between her persecution and her proposed PSGs; and (3) by determining that she lacked a well-founded fear of future persecution. Though Vergara Soto's brief suggests that she considers her proposed PSGs to include the Vergara family, nowhere does she argue that the IJ failed to address this family-specific PSG. Because we will "not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," *Alcaraz*

1

*v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004) (citation omitted), I would not address whether the IJ failed to address this PSG.[1]

Even if the argument that the IJ did not address Vergara Soto's family-specific PSG is properly considered, it fails because she never presented this PSG to the IJ. The majority concludes that Vergara Soto raised her family-specific PSG when she articulated two additional PSGs in her hearing before the IJ. The IJ asked what the additional PSGs were, to which Vergara Soto's counsel replied, "It is relative of a wealthy business owner and relative of a wealthy landowner." The IJ followed up by asking, "So, in addition to the three particular social groups you identified earlier, the next two are relative of wealthy business owner and relative of wealthy landowner, correct?" Vergara Soto's counsel replied, "Correct, your honor."

This colloquy illustrates that Vergara Soto never characterized her additional PSGs in family-specific terms. She described the group as "relative of a wealthy business owner and relative of a wealthy landowner." The IJ even repeated the proposed PSGs back to Vergara Soto's counsel and confirmed those were the correct groups. The IJ did not err by interpreting this description to refer to relatives of

---

[1] The Government's brief suggests that Vergara Soto raised this argument before the BIA. Based on Vergara Soto's BIA brief, this appears inaccurate. Although there is a heading in the argument section referencing the IJ's error in articulating the proper PSG, none of the body of the argument addresses this argument. But even if Vergara Sota raised this argument before the BIA, she did not make this argument in her brief to this court.

2

wealthy business owners and landowners rather than to Vergara Soto's father and grandfather specifically.

The majority says it is clear what Vergara Soto meant because her counsel also described the PSG as "the family related to the business and the wealthy landowner" during the hearing. The majority determines that by using the term "the family" once during the hearing, Vergara Soto's counsel stated a family-specific PSG. But as discussed, counsel also characterized the PSG as "relative of a wealthy business owner and relative of a wealthy landowner." And the IJ characterized the PSG as "relative of wealthy business owner and relative of wealthy landowner" (which counsel confirmed was correct).

All this discussion about "a," "the," or no article at all is much ado about nothing. A specific article here or a general article there does not change the fact that Vergara Soto did not articulate a family-specific PSG in response to the IJ's inquiry. IJs cannot be expected to surmise any possible PSG that might be suggested by the petitioner's statements and evidence—especially when, as here, the IJ directly asked counsel to state the proposed PSGs and then repeated them back to confirm he understood correctly.[2] *Cf. United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263

---

[2] This is not a case where evolving statements by the petitioner required the IJ to identify the "heart of [the] claim" to deduce the petitioner's PSG. *See Antonio v. Garland*, 58 F.4th 1067, 1075 & n.13 (9th Cir. 2023). As discussed, the IJ twice clarified what Vergara Soto's proposed PSGs were before ruling. The IJ did not "ignore arguments raised by a petitioner." *See id.* at 1075 (citation omitted).

3

(9th Cir. 2013) ("IJs are not expected to be clairvoyant" when informing petitioners about possible relief. (citation omitted)). The IJ did not fail to address any of Vergara Soto's PSGs. Indeed, both the IJ's oral decision and the BIA's opinion listed the PSGs just as Vergara Soto's counsel confirmed them during the hearing.

Evaluating the five PSGs Vergara Soto raised, both the IJ and BIA determined that Vergara Soto failed to demonstrate the requisite nexus between any past or feared persecution and the PSGs. We review this determination for substantial evidence and will reverse the agency only if the evidence compels the contrary conclusion. *Santos-Ponce v. Wilkinson*, 987 F.3d 886, 890 (9th Cir. 2021). The record does not compel the contrary conclusion here. *See Macedo Templos v. Wilkinson*, 987 F.3d 877, 883 (9th Cir. 2021) (finding substantial evidence supported the agency's nexus determination when the petitioner "did not present evidence that the crimes were committed by the same criminals driven by the same motive, beyond his opinion . . . ."). The agency's nexus determination is dispositive. Thus, the petition should be denied.