NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

SEP 5 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERTO LOPEZ-GOMEZ, AKA Raul Lopez-Vieyra, AKA Felipe Miranda Ramos, AKA Felipe Rigoberto Ramos Miranda; DEYLIS YESENIA MORALES-VELASQUEZ; GELBER ARONI MORALES, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 17-71197 <br><br> Agency Nos. A205-512-285 <br> A206-725-980 <br> A206-725-975 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 7, 2023[**]
Pasadena, California

Before: M. SMITH, HAMILTON,[***] and COLLINS, Circuit Judges.

Petitioners Roberto Lopez-Gomez, his wife Deylis Yesenia Morales-

Velasquez, and their son Gelber Aroni Morales—all citizens of Guatemala—

petition for review of a decision by the Board of Immigration Appeals ("BIA")

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

[***] The Honorable David F. Hamilton, Senior United States Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

dismissing their appeal from a decision of an Immigration Judge ("IJ") denying their respective applications for asylum, withholding of removal, and protection under the Convention Against Torture ("Torture Convention").[1]  We have jurisdiction under § 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252, and § 2242(d) of the Foreign Affairs Reform and Restructuring Act, 8 U.S.C. § 1231 note.  *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1690–91 (2020).  We review the agency's legal conclusions de novo and its factual findings for substantial evidence.  *See Davila v. Barr*, 968 F.3d 1136, 1141 (9th Cir. 2020).  Under the latter standard, the "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We deny the petition.

1.  Substantial evidence supports the agency's conclusion that Petitioners' membership in their proposed particular social group—*viz*., "Guatemalan citizens who are in danger of being harmed where there is no protection from the government or the police"[2]—was not "one central reason" for their alleged

---

[1] Lopez-Gomez and Morales-Velasquez have each filed individual applications for asylum, withholding, and protection under the Torture Convention.  Morales-Velasquez is also listed as a rider on her husband's asylum application, and Aroni Morales is listed as a rider on both of his parents' applications.  Since Lopez-Gomez and Morales-Velasquez rely on the same set of evidence, our merits analysis is essentially the same for all Petitioners with respect to the respective relief for which they may be considered.

[2] This was the only social group that Petitioners raised in their brief before the BIA.  To the extent that Petitioners' opening brief in this court attempts to raise a

2

persecution, as required to establish a claim for asylum. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 358 (9th Cir. 2017).

Petitioners' evidence of their past persecution in Guatemala consisted of (1) a note left on the floor of Lopez-Gomez's home demanding money and threatening to kidnap Lopez-Gomez if he did not comply; (2) a threatening follow-up phone call again demanding the money; (3) a roadway robbery in which Lopez-Gomez and his family were forced to hand over cash and jewelry; (4) an unsuccessful attempt by "thieves" to force open the door at Lopez-Gomez's parents' home (an incident during which no one was harmed); and (5) an incident in which Lopez-Gomez's father heard someone moving around in "the back of the house," but "nothing happened."

When asked by the IJ "what was motivating the people who robbed you," Lopez-Gomez responded "I have no idea but over there this happens often." When asked by the IJ "what was motivating" the people who left the "note on the floor demanding money," Lopez-Gomez responded, "I believe that it is because they thought we had money." He also stated that it was "[b]ecause also when I had been here before I had bought a piece of property and I had an automobile that I

---

new or modified proposed social group, the Government's answering brief has properly raised Petitioners' failure to exhaust such claims before the agency. We therefore decline to consider them. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023) (stating that, although the INA's exhaustion requirement is not jurisdictional, it will be enforced if not waived or forfeited by the Government).

3

had bought." When asked what motivated the person who called him on the phone, Lopez-Gomez responded, "I truly have no idea of what motivated him." When Morales-Velasquez was asked the same question about the motivation behind the phone call, she responded, "perhaps they thought that we have money. That's my only thought." When asked about the motivation of the "thieves" who tried to enter Lopez-Gomez's parents' home, Lopez-Gomez responded, "[t]here's a lot of crime and they just look around for a place to rob. These are people that don't work. And they just think about robbing and harming humanity." Finally, when asked about the motivation of the people who were in the back of Lopez-Gomez's father's home during the incident when "nothing happened," Lopez-Gomez responded that the unknown intruders may have been there to "request the money" or "to kidnap us according to what they had said." When asked by the IJ if he was referring to "the money that they previously had demanded that you didn't pay," Lopez-Gomez responded "[y]es."

Because Petitioners themselves testified that their alleged persecutors were motivated by money (and did not testify as to any other potential ground for their alleged persecution), the agency permissibly concluded that the evidence "does not indicate that the unknown individuals were motivated by *any* purpose other than their desire for money," and that "the *only* motivation provided" by Petitioners' testimony "was the unknown individuals' desire to obtain money" (emphasis

4

added). For similar reasons, the agency properly concluded that any future harm that Petitioners fear would likewise be "motivated by a general criminal desire to obtain their money." The lack of nexus to a protected ground forecloses Petitioners' claims for asylum. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground.").

2. With respect to the issue of nexus, the BIA erred in stating that, because "the respondents did not demonstrate eligibility for asylum, they necessarily failed to meet the higher burden required for withholding of removal." The "a reason" nexus standard for withholding of removal imposes a *lower* burden on Petitioners than the "one central reason" nexus standard for asylum. *See Barajas-Romero*, 846 F.3d at 360. Petitioners, however, have forfeited this issue by failing to raise it in their opening brief before this court. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008). In any event, where (as here) the BIA explicitly concludes that there is no nexus *at all* between a protected ground and a petitioner's alleged persecution, remand would be "an idle and useless formality," because the BIA has already resolved the dispositive nexus issue against the Petitioners under *any* applicable legal standard. *Singh v. Barr*, 935 F.3d 822, 827 (9th Cir. 2019) (citation omitted); *see also Santos-Ponce v.*

*Wilkinson*, 987 F.3d 886, 890 (9th Cir. 2021).

3. Substantial evidence supports the agency's rejection of Petitioners' claims under the Torture Convention. "[T]he burden of proof is on the petitioner 'to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Kamalthas v. I.N.S.*, 251 F.3d 1279, 1284 (9th Cir. 2001); *see also Garcia v. Wilkinson*, 988 F.3d 1136, 1148 (9th Cir. 2021). Petitioners do not allege that they have been tortured in the past. *See Nuru v. Gonzales*, 404 F.3d 1207, 1217 (9th Cir. 2005) ("Past torture is the first factor we consider in evaluating the likelihood of future torture because past conduct frequently tells us much about how an individual or a government will behave in the future."). Petitioners have failed to point to any other evidence in the record that would compel the conclusion that Petitioners face a greater than 50 percent chance of torture if they return to Guatemala.[3]

Petition for review **DENIED**.

---

[3] Petitioners make a conclusory assertion that the agency proceedings violated due process. "[B]y failing to develop the argument in [their] opening brief, [Petitioners] forfeited it." *Iraheta-Martinez v. Garland*, 12 F.4th 942, 959 (9th Cir. 2021).