In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1692

KYLIE DIDONATO,

*Plaintiff-Appellant,*

*v.*

TIM PANATERA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-02737 — **Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 13, 2021 — DECIDED FEBRUARY 3, 2022

Before RIPPLE, ROVNER, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Section 1983 lawsuits can raise hard questions about whether misconduct constitutes state or private action. While the wrongdoing alleged here is plenty disturbing, we find the line drawing more straightforward. Kylie DiDonato was seriously injured when she fell and hit her head in Tim Panatera's bathroom. DiDonato later invoked § 1983 and alleged that Panatera—a City of Chicago paramedic—shirked his responsibility to treat her and instead saw

her weakened state as an opportunity to sexually assault her. She contended that this inaction by someone acting under "color of state law" violated her rights under the U.S. Constitution. The district court recognized the gravity of Panatera's alleged misconduct, but rightly concluded that DiDonato failed to plead facts showing that Panatera was acting in his capacity as a City paramedic for purposes of a § 1983 claim. We affirm.

**I**

Kylie DiDonato slipped, fell, and seriously injured her head on a bathtub in Tim Panatera's home in March 2018. Panatera found DiDonato disoriented and badly bleeding on the bathroom floor. But rather than calling 911, driving DiDonato to the hospital himself, or drawing upon his training as a paramedic to treat her, Panatera allegedly did no more than rinse the blood from DiDonato's head and wrap it in a towel. From there, DiDonato contends, Panatera moved her to his bed and sexually assaulted her as she drifted in and out of consciousness. When DiDonato regained consciousness the next afternoon, Panatera drove her home and then reported to work.

With the help of a friend, DiDonato made her way to an emergency room later that day. The ER team sutured her head wounds and informed her that she had sustained head trauma and a concussion.

A few months later DiDonato filed this lawsuit and, in an amended complaint, added a § 1983 claim against Panatera. She alleged that Panatera, as a licensed paramedic, violated her rights under the Fourteenth Amendment's Due Process Clause by failing to provide medical care after her fall. She

also brought a host of state law claims, including for assault, battery, and negligence.

The district court dismissed DiDonato's § 1983 claim for two interrelated reasons. *First*, the court explained that, under the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services* and related cases, DiDonato had to allege that a state actor failed to adhere to a duty to protect and care for a person with whom the state had a "special relationship." 489 U.S. 189, 200–02 (1989). The classic example is a prisoner: the state owes those in its custody physical protection and medical care. See, *e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). But, the district court continued, states (and municipalities like the City of Chicago here) are not in a "special relationship" with all residents and thus do not shoulder a constitutional duty to provide medical care to anyone needing help. Applying those principles led the district court to conclude that DiDonato failed to allege facts necessary to show the City—through one of its off-duty paramedics—had a constitutional obligation to protect and care for her following her fall. What was lacking, the district court emphasized, was any allegation that DiDonato, as a functional matter, was ever in the City's care or custody.

*Second*, and relatedly, the district court concluded that DiDonato failed to plausibly allege that Panatera acted "under color of state law" on the night in question. Section 1983, the court explained, does not cover disputes between private citizens, and an individual's employment by the state does not render any and all action by that person state action. To be sure, the district court acknowledged that some steps Panatera took may have amounted to medical care, such as wrapping DiDonato's head in a towel. But the district court

determined that the necessary state action inquiry could not proceed at that level of generality. Instead, the analysis needed to account for the context in which DiDonato's need for help and medical care arose—an entirely private interaction between Panatera and DiDonato within his home. The alleged facts, in short, did not permit a plausible finding that Panatera failed to perform any official duty as a licensed paramedic.

Having dismissed DiDonato's § 1983 claim, the district court then declined to exercise supplemental jurisdiction over the remaining state law claims.

DiDonato now appeals.

## II

### A

A plaintiff may hold a public official personally liable for misconduct under § 1983 upon satisfying two "essential elements." *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994). First, the challenged conduct must have been "committed by a person acting under color of state law"—a requirement coming directly from § 1983's text. *Id.* Second, the state actor's conduct must have deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution" or federal law. 42 U.S.C. § 1983; see also *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

The traditional understanding of what it means for an official to act "under color of state law" encompasses misconduct by officials exercising power "possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). Indeed, it is "firmly established" that a § 1983 defendant acts "under color of state law when he abuses the position given to him by the State." *Id.* at 49–50.

But it is equally well settled that a "mere assertion that one is a state officer does not necessarily mean that one acts under color of state law." *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990); see also *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) ("Not every action by a state official or employee is to be deemed as occurring 'under color' of state law.") (citation omitted). Nor is it dispositive whether the state employee was on- or off-duty at the time the incident occurred. See, *e.g.*, *Briscoe v. LaHue*, 663 F.2d 713, 721 n.4 (7th Cir. 1981) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way 'related to the performance of police duties.'") (citation omitted); see also *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118–19 (7th Cir. 1995) (collecting cases concluding that off-duty officers were nonetheless acting under color of state law in particular circumstances). Whether an individual is acting under color of state law "turn[s] largely on the nature of the specific acts" the official performed, "rather than on merely whether he was actively assigned at the moment" to the performance of his official duties. *Pickrel*, 45 F.3d at 1118.

Our case law illustrates the necessity of a rigorous factbound inquiry. Take, for example, our decision in *Pickrel*. Crystal Pickrel alleged that an off-duty officer acted under color of state law by informing her she was under arrest,

throwing her to the ground, and putting her in handcuffs. See *id.* at 1117. We concluded Pickrel had pled enough to survive a motion to dismiss based on her allegations that the officer was wearing his police uniform, complete with badge and gun, and driving his marked squad car at the time of their encounter. See *id.* at 1116–18 (emphasizing that the uniform and badge were both "signs of state authority," the gun enabled the officer to "enforce his authority," and the squad car "advertis[ed] the presence of a police officer" to those present).

We adhered to similar reasoning in *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980). Flor Lopez brought a § 1983 suit against a state court judge who detained him at gunpoint, initiated charges for petty theft, convicted him on an allegedly forged guilty plea, and sentenced him to eight months in jail. See *id.* at 1231–33. Though then-Judge Vanderwater overstepped the bounds of his state-granted authority, we concluded his actions were taken under color of state law. "Action taken by a state official who is cloaked with official power and who purports to be acting under color of official right is state action," and the judge was only able to take the constitutionally offensive actions he did "because he was cloaked with the office of the judge." *Id.* at 1236–37.

Where, on the other hand, a plaintiff does not allege that a public official's actions involved some inappropriate invocation or exercise of state authority, there is no § 1983 claim. And that is so, our cases demonstrate, even if the alleged conduct resembles job-related tasks the official performs at the state's behest. We saw this in *Barnes v. City of Centralia*. 943 F.3d 826 (7th Cir. 2019). A police officer reported credible threats made against him and his family to a state prosecutor, and the prosecutor decided to press charges against the

individual involved. See *id.* at 829–30. After the charges were dropped, the individual brought a § 1983 case against the officer. We explained that although the interaction that led to the plaintiff's arrest "occurred during [the defendant's] employment" as a police officer, the officer acted as a private citizen when he lodged his complaint with the prosecutor, "not as an investigating officer." *Id.* at 831. His report was therefore "a private act that did not involve any exercise of state authority." *Id.*

Similarly, in *Hughes v. Meyer*, we concluded that a Wisconsin game warden who reported threatening conduct to law enforcement was "functionally equivalent to . . . any private citizen" making a police report—and, critically, his "status as a DNR official did not clothe him with greater authority" in that act "than any other citizen would possess." 880 F.2d 967, 972 (7th Cir. 1989).

Considered together, these cases supply the principles that resolve this appeal. To plead that a defendant acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct. That the defendant is a state employee is not enough. "[S]tate officials or employees who act without the cloth of state authority do not subject themselves to § 1983 suits." *Id.* at 971; see also, *e.g.*, *Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001) (affirming dismissal of a § 1983 claim brought against an intoxicated off-duty police officer who struck and killed a pedestrian in his private vehicle because the plaintiff did not allege that the officer was "engaged in police activity, that he displayed any police power, or that he possessed any indicia of his office at the time of the accident").

B

The district court applied these exact principles and determined that DiDonato failed to allege that Panatera acted under color of state law. We reach the same conclusion after taking our own independent look at the allegations in DiDonato's second amended complaint. See, *e.g.*, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (applying de novo review to a Rule 12(b)(6) dismissal).

DiDonato alleged Panatera was acting "[i]n performance of his official duties" as a trained paramedic when he "picked [her] off the floor, placed her in his bathtub," "rinsed blood from her head and body" and "wrapped [her] head with a non-sterile bathroom towel." But what the rest of the complaint makes clear is fatal to DiDonato's § 1983 claim: the events in question all occurred in the privacy of Panatera's home and, more importantly, in the context of DiDonato and Panatera's personal relationship.

Panatera's alleged attempts to slow or stem DiDonato's bleeding certainly relate to the duties he performs as a paramedic—no doubt he routinely treats head and other superficial wounds while responding to 911 calls. And Panatera was more able to respond to DiDonato's injuries than someone without medical training. His professional background leaves more room for criticism of the adequacy of Panatera's response and the wisdom of his decision making, and perhaps leaves him exposed to liability for negligence under state law.

But the mere overlap between Panatera's routine job responsibilities and the conduct DiDonato complained of does not mean that Panatera acted under color of state law when he decided not to take DiDonato to the emergency room or to

provide other medical help. What is missing from DiDonato's complaint is any plausible allegation either that Panatera's action or inaction was a misuse of the City's power or that his wrongdoing was made possible because he was "clothed with the authority of state law." *Barnes*, 943 F.3d at 831 (citation omitted). Panatera was not dispatched to the scene to tend to DiDonato's injuries in his role as a City paramedic. Nor did he invoke his authority to interfere with someone else's attempt to treat her wounds. Common decency, not his employment status, demanded Panatera take some steps to stop DiDonato's bleeding. And it was Panatera's alleged self-serving opportunism, not an exercise of state authority, that prevented DiDonato from leaving his home and seeking further care.

DiDonato urges a different conclusion by focusing on a particular detail alleged in her complaint—that Panatera was "on call" as a paramedic on March 19 and took at least one phone call from a work colleague before he drove her home. But that contention, which we accept as true, does not change our analysis. DiDonato's complaint still lacks any allegation that Panatera's alleged misconduct toward her was facilitated by a misuse of state power or involved an invocation of state authority. See, *e.g.*, *Luce v. Town of Campbell*, 872 F.3d 512, 514 (7th Cir. 2017) (concluding that a public official who made defamatory posts about the plaintiff and who "did some of the dirty work while on duty" using office equipment did not act under color of state law).

DiDonato's complaint describes behavior that, while abhorrent, was "wholly unconnected" to Panatera's employment. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). DiDonato and Panatera did not encounter each

other as paramedic and patient, but as private persons to-
gether in Panatera's home. Panatera's "actions were those of
a private citizen in the course of a purely private social inter-
action." *Id.* Any action or inaction was not under color of state
law.

Because we agree with the district court that DiDonato
failed to allege that Panatera acted under color of state law,
we need not immerse ourselves in any aspect of the court's
reasoning under *DeShaney*. We instead stop on the state action
point and AFFIRM the dismissal of DiDonato's § 1983 claim.