# United States Court of Appeals
## For the First Circuit

Nos. 21-1128
     21-1590

ZEIKE ALEXANDER REYES PUJOLS, a.k.a. Jose Gonsalez-Rodriguez,

Petitioner,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITIONS FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Lipez and Gelpí, Circuit Judges.

Ethan R. Horowitz, with whom Northeast Justice Center was on brief, for petitioner.
Spencer Shucard, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, with whom Brian Boynton, Acting Assistant Attorney General, Civil Division, and Jessica E. Burns, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

June 14, 2022

**BARRON**, **Chief Judge**.  Zeike Alexander Reyes Pujols, a citizen of the Dominican Republic who entered the United States without admission or parole, petitions for review of a ruling by the Board of Immigration Appeals ("BIA") that affirms the final order of removal that was entered against him pursuant to 8 U.S.C. §§ 1229-1229a.  He also seeks, in the alternative, review of the BIA's denial of his motion to reconsider its affirmance.  We grant the petition for review of the BIA's ruling affirming the final order of removal and dismiss as moot the petition for review of the BIA's denial of Reyes's motion for reconsideration.

## I.

Reyes entered the United States in April of 2017.  The next month, he was served with a Notice to Appear for removal proceedings.  Reyes conceded removability but sought relief from removal based on asylum and withholding of removal, as well as Article 3 of the Convention Against Torture ("CAT").  The Boston Immigration Court held a merits hearing on October 21, 2019, on Reyes's defenses to removal.

Reyes testified at the hearing that he worked as a chauffeur for a wealthy man in the Dominican Republic named Joel de la Cruz and endured severe abuse in consequence.  With respect to that abuse, Reyes testified as follows:

De la Cruz told Reyes in 2016 to deliver 600,000 pesos to a man named Raul.  Reyes delivered the money to Raul, and Raul

then presented Reyes with a sealed box, which he instructed Reyes to bring to de la Cruz. Raul would not tell Reyes, however, what the box contained. Believing the box might contain contraband, Reyes refused to bring the box to de la Cruz.

When Reyes returned to de la Cruz's house, de la Cruz and two uniformed police officers accosted Reyes. They accused him of stealing the money that he had been instructed to deliver to Raul.

De la Cruz drove Reyes and the two officers to a police station. De la Cruz remained outside in his vehicle, and the two uniformed police officers brought Reyes inside. The officers threatened Reyes, told him that he needed to repay the 600,000 pesos, and stabbed him in the leg multiple times with a screwdriver.

The same two officers later came to Reyes's neighborhood and shot him multiple times, which required his hospitalization. Then, when Reyes was going to be discharged from the hospital, the same two officers took Reyes from the hospital and brought him back to the police station, where they again threatened him and drove a screwdriver into his leg.

In addition to this testimony, Reyes presented in support of his request for asylum, withholding of removal, and protection under the CAT, medical evidence documenting injuries

that he had received. The injuries were consistent with the shootings and stabbings that his testimony described.

The Immigration Judge ("IJ") concluded that Reyes's testimony was not "reliable" and denied Reyes's applications for asylum, withholding of removal, and protection under the CAT. Reyes appealed to the BIA only the IJ's decision regarding his CAT claim. The BIA affirmed the IJ's ruling denying Reyes's CAT claim, after ruling that "there is no clear error in the" IJ's "adverse credibility finding" regarding Reyes's testimony. The BIA concluded that, "[s]ince [Reyes] lacked credibility and the objective evidence in the record does not independently establish his claim, he did not satisfy his burden to provide eligibility for protection under the" CAT.

Reyes moved for reconsideration on March 21, 2021, but the BIA denied the motion on July 15, 2021. Reyes then filed timely petitions for review of both the BIA's affirmance of the IJ's ruling and its denial of Reyes's motion to reconsider. We have jurisdiction to entertain these petitions pursuant to 8 U.S.C. § 1252.

## II.

To succeed on a CAT claim, a noncitizen must "prove that it is more likely than not that he will be tortured if returned to his home country." Mazariegos v. Lynch, 790 F.3d 280, 287 (1st Cir. 2015). Reyes appears to concede that he cannot make the

- 4 -

requisite showing if substantial evidence supports the IJ's adverse credibility finding against him. See Cuesta-Rojas v. Garland, 991 F.3d 266, 270 (1st Cir. 2021). Reyes argues, however, that given the other evidence in the record, his testimony (if credible) does suffice to support (even though it does not compel) the conclusion that he has met his burden to prove what he must on his CAT claim. And, Reyes contends, the BIA erred in affirming the IJ's adverse credibility finding. We thus now turn to that latter contention, on which his petition for review of the BIA's affirmance of the IJ's final order of removal depends.

## A.

Reyes first asks us to direct our attention to the portion of the IJ's adverse credibility finding that concerns Reyes's demeanor during his testimony. Specifically, the IJ observed that Reyes at times "testified in almost a robotic manner" and that while Reyes did "become very emotional when discussing his first encounter with the police where he was stabbed in [his] leg with a screwdriver, he did not have the same emotion when discussing being shot and hospitalized . . ., and again, many of his responses candidly came out as rehearsed." The IJ also stated that in finding that Reyes's testimony "was not fully reliable," she had "considered the totality of the circumstances, including [Reyes's] demeanor while testifying."

- 5 -

Reyes asserts that the IJ's adverse credibility finding cannot be sustained insofar as it is based on the assessment of Reyes's demeanor because that assessment was premised on an "unconscious bias against trauma survivors." In support of this contention, Reyes points to the features of his testimony that the IJ zeroed in on -- such as his flat affect -- and contends that they are features consistent with a person who suffers from Post-Traumatic Stress Disorder ("PTSD"). He then further argues that the IJ failed to consider the evidence in the record that Reyes suffered from PTSD in assessing his demeanor.

The government does not dispute that the record supportably shows that Reyes suffers from PTSD. Nor does the government appear to take issue with Reyes's contention that some of the aspects of his demeanor that the IJ identified as supporting a finding that his testimony was not credible -- such as a "robotic" affect at times and a highly emotional affect at others -- are recognized symptoms of PTSD. The government points out, however, that the BIA "explicitly declined to affirm" the IJ's assessment of Reyes's demeanor as evidencing a lack of credibility "because doing so was unnecessary in affirming the overall decision." The government thus contends that Reyes's PTSD-based challenge to the IJ's adverse credibility finding provides no basis for overturning the BIA's affirmance of it.

In response, Reyes argues that what he asserts was the IJ's "unconscious bias against trauma survivors" "infected" the entirety of the IJ's adverse credibility determination. He thus contends that even the portions of that determination that concern what the IJ described as "critical inconsistencies" are tainted and so cannot supply a predicate for the BIA's affirmance of the IJ's adverse credibility finding on non-demeanor-based grounds.

To support this line of argument, Reyes points in part to three cases in which we have vacated the BIA's affirmance of adverse credibility determinations by the IJ that derived at least in part from erroneous predicate factual findings. See Cuesta-Rojas, 991 F.3d 266; Mboowa v. Lynch, 795 F.3d 222 (1st Cir. 2015); Jabri v. Holder, 675 F.3d 20 (1st Cir. 2012). In all three, we vacated the BIA's affirmance of an immigration judge's adverse credibility finding that we determined was predicated on a finding of "discrepancies" that the record did not support. Cuesta-Rojas, 991 F.3d at 272-73; Mboowa, 795 F.3d at 227-28; Jabri, 675 F.3d at 23, 26.

But, the BIA in this case expressly stated that it "d[id] not rely on" the assessment of Reyes's demeanor by the IJ that Reyes contends tainted the IJ's overall credibility finding. The BIA then purported to rely solely on what it contended were distinct, non-demeanor-based predicates for that adverse credibility finding that the IJ had made. That makes this case

different from the three on which Reyes relies, as in none of them did the BIA expressly disclaim reliance on the problematic portion of the IJ's adverse credibility finding in affirming it.

Moreover, we cannot say on this record that the BIA, in affirming the IJ's adverse credibility finding while disclaiming any reliance on the IJ's assessment of Reyes's demeanor, affirmed an adverse credibility finding that the IJ did not actually make. And that is because we cannot say that the IJ's adverse credibility finding was itself dependent upon the assessment of Reyes's demeanor that Reyes contends was problematic because of its disregard of his PTSD diagnosis.

Indeed, in arguing to the BIA, Reyes did not himself contend that the IJ's assessment of Reyes's demeanor infected even those distinct predicates for her adverse credibility finding that she identified that were not demeanor-based -- namely, what the IJ termed "critical inconsistencies" in his account -- and on which the BIA then relied. To the contrary, Reyes separately challenged the record support for those distinct grounds for finding his testimony not to be credible without contending that those grounds could not otherwise -- independently -- provide a basis on which the BIA could affirm the IJ's adverse credibility finding.

Nor did the IJ herself, in her opinion, appear to make her adverse credibility finding dependent on the assessment of Reyes's demeanor. To be sure, the IJ did state that

> [h]aving reviewed the record in its entirety, the Court finds that [Reyes]'s testimony was not fully reliable. In making that determination, the Court has considered the totality of the circumstances, including [Reyes]'s demeanor while testifying, his responsiveness to questions that were asked, the inherent plausibility of his claim and the consistency of his statements in comparison to the documentary evidence.

But, the IJ then went on to explain, after having made the assessment of his demeanor, that she "also recognized several critical inconsistencies between either what was alleged by [Reyes] and the exhibits, or basic common sense that called into question the plausibility of his claims." And then, after detailing these inconsistencies and implausible aspects of Reyes's account, the IJ explained that "[w]hile this is not an exhaustive list of the inconsistencies, . . . the Court finds that these examples, taken in the aggregate, demonstrated a lack of complete candor and cast a shadow of unreliability."

We recognize that Reyes also asserts in his petition for review that the IJ's assessment of Reyes's demeanor reveals the IJ to have had an "unconscious bias against trauma survivors" based on Reyes's status as an individual with PTSD and that this bias infected the entirety of the IJ's adverse credibility finding and not just the IJ's assessment of Reyes's demeanor as evidence of a lack of credibility. Thus, we recognize that Reyes contends to us that for this bias-related reason the IJ's overall adverse

- 9 -

credibility finding cannot stand, such that the BIA's affirmance of it cannot either, and that this is the case notwithstanding the BIA's attempt to cordon off the demeanor-based portion of the IJ's adverse credibility finding.

In taking up this contention, we note at the outset that it is not at all clear that Reyes presented this contention in his appeal to the BIA.  But, even assuming that he did, such that we have jurisdiction to consider it, see Mazariegos-Paiz v. Holder, 734 F.3d 57, 62 (1st Cir. 2013) ("Ordinarily . . . an alien who neglects to present an issue to the BIA fails to exhaust his administrative remedies with respect to that issue and, thus, places it beyond our jurisdictional reach."), the contention is without merit.

As we have explained, there is nothing on the face of the BIA's opinion that would suggest that the BIA did rely on the IJ's assessment of Reyes's demeanor in affirming the IJ's adverse credibility finding.  Nor, as we have explained, does the face of the IJ's opinion demonstrate that the IJ's credibility finding depended on that assessment, such that, but for that assessment, the IJ might have deemed Reyes's testimony to have been credible.

Reyes nonetheless contends that precedent -- albeit from other circuits -- requires that we conclude that the IJ's "unconscious bias against trauma survivors" that Reyes contends is manifest in the IJ's negative assessment of Reyes's demeanor

tainted even the IJ's finding that Reyes was not credible due to the "inconsistencies" in his account. Here, Reyes relies on Huang v. Gonzales, 453 F.3d 142 (2d Cir. 2006), Elias v. Gonzales, 490 F.3d 444 (6th Cir. 2007), and Shahinaj v. Gonzales, 481 F.3d 1027 (8th Cir. 2007). But, we do not agree with Reyes on this point.

In Huang, the Second Circuit found that the IJ had "berated" the petitioner and "launched into a diatribe against Chinese immigrants lying on the witness stand," 453 F.3d at 149-50, while in Elias the Sixth Circuit found that "the IJ repeatedly addressed petitioner in an argumentative, sarcastic, and sometimes arguably insulting manner that went beyond fact-finding." 490 F.3d at 451. Thus, neither of those out-of-Circuit precedents provides support for Reyes's contention, given their starkly differing facts. In neither case was the reviewing court asked to discern evidence of bias on the part of the adjudicator merely from the fact that the adjudicator identified aspects of a witness's demeanor that, though concerning in isolation, might be explicable because of past trauma. Nor is Shahinaj any help to Reyes, as it vacated the BIA's affirmance of an adverse credibility determination because there -- unlike here -- the BIA failed to "explain" how the IJ's decision could stand after the BIA excised the IJ's improper inferences. See 481 F.3d at 1029.

**B.**

Reyes does separately contend that, even if we set aside his assertion of bias and accept the government's contention that the BIA's affirmance of the IJ's adverse credibility finding was not predicated on the IJ's negative assessment of Reyes's demeanor, we still must vacate the BIA's ruling. That is so, Reyes contends, because substantial evidence does not support the IJ's findings of the "inconsistencies" and implausible aspects of Reyes's account of how he had been abused that the BIA determined that the IJ had independently relied on (as a collective) in finding Reyes's testimony not to be credible. Our review of whether substantial evidence does support that non-demeanor-based adverse credibility determination "is of the record 'as a whole,'" Cuesta-Rojas, 991 F.3d at 271 (quoting Al-Amiri v. Rosen, 985 F.3d 1, 4 (1st Cir. 2021)), and we must defer to the adverse credibility finding by the IJ that the BIA affirmed so long as "no reasonable adjudicator would be compelled to conclude to the contrary," Diaz-Garcia v. Holder, 609 F.3d 21, 26-27 (1st Cir. 2010) (quoting Anacassus v. Holder, 602 F.3d 14, 18 (1st Cir. 2010)).

To make the case that there is no substantial evidence to support the finding in question, Reyes homes in on one of the "inconsistencies" that the IJ identified and that the BIA then relied on in affirming the IJ's adverse credibility finding. Specifically, Reyes argues that "both the [IJ] and the [BIA] erred

in finding that" Reyes received a loan for an amount of money that "would have been enough to satisfy Reyes's 600,000-peso/$10,000 USD debt and prevent further violence."

The IJ observed in that regard that Reyes secured a loan to flee the country "that with interest accrued to date, closely approximated the sum at issue with Raul and Joel, which belies the assertion that he was unable to come up with that amount of money." The BIA noted approvingly that "the [IJ] . . . question[ed] the plausibility of [Reyes]'s claim because the loan amount was very close to the debt owed."

The problem with finding an inconsistency in Reyes's account based on this portion of the record is that nothing in it shows that, even with the loan that Reyes did secure, he was able to "come up with" the money sought from him by those who he contended were his attackers. Thus, nothing in this portion of the record supports the conclusion that there is any inconsistency in his testimony in the relevant respect.

To be sure, the record shows that, by Reyes's account, those men sought 600,000 pesos from Reyes, which he does not dispute equates -- as the BIA found -- to approximately $10,000. It further shows that he secured a loan during the period in which the men in question were seeking to recoup the $10,000 that they contended that Reyes owed them. But, nothing in the record

- 13 -

indicates that, via the loan, Reyes was, contrary to his testimony, able to "come up with" that amount of money.

The relevant testimony at the removal proceedings is as follows:

> Q. Okay, and so, in total, how much do you think [the friend who assisted Reyes in obtaining a loan secured by Reyes's home] wound up having to get out of the house to pay for your travels to the United States?
>
> A. He told me around $7,500 to the border.
>
> Q. Okay, and ultimately with interest, how much do you think [the loan] wound up being?
>
> A. The truth is I don't, I don't know.
>
> Q. Could it have been as much as 10,000?
>
> A. More or less.
>
> Q. Okay, so could it have been even more than 10,000?
>
> A. I think until that point, less than 10,000.

(emphasis added).

We suppose this exchange could be read to support a finding that the total balance due on the loan that Reyes obtained would ultimately amount to $10,000. But, even granting the reasonableness of that reading, we do not see how the record undermines Reyes's testimony that he did not pay off the attackers because he "didn't have a way" to do so. Even on that reading, the record would show at most that, down the line, Reyes would have assumed a debt that, with interest, equaled $10,000. It would

- 14 -

not thereby show that -- contrary to his account -- he had secured $10,000, let alone that he had done so in a reasonably timely fashion from the perspective of the collectors of his purported debt.[1]   The amount that one owes as a debt obviously is not an amount that one therefore has, even if it is reasonable to conclude that it is inconsistent to assert that one is "unable to come up with" money to pay off seemingly impatient potential attackers whenever there is evidence to support the conclusion that one would <u>eventually</u> secure funds equal to the amount such attackers are demanding.

---

[1] The BIA arguably recast the IJ's findings and thereby treated them as not resting on there being an inconsistency between Reyes's claim that he was unable to pay off his alleged attackers and the evidence regarding the loan that he had secured.  In that regard, the BIA stated that, because Reyes "did not use [the loan] to repay his former employer but to flee the country," the IJ "question[ed] the plausibility of [Reyes]'s claim because the loan amount was very close to the debt owed."  The IJ emphasized, however, that the amount of loan money Reyes received "belie[d] the assertion that he was unable to come up with" the amount he owed his alleged persecutors without suggesting that it would have been implausible for Reyes to have used money that he obtained from the loan to flee rather than to pay off the men who attacked him.  Moreover, even if the IJ's rationale for finding Reyes's story implausible were the one that the BIA ascribed to the IJ, a reasonable adjudicator would be compelled to reject it.  It is not in any way implausible that someone who reports having been shot, stabbed, and threatened with death over an unpaid debt would use what money he had to flee those attackers rather than to repay them, especially when, as we have explained is the case here, the record does not provide support for finding that the debtor at any point had in hand the amount that he was claimed to have owed and shows instead at most only that he had secured a loan that would (accounting for interest) require him to pay back such an amount.

Of course, if the IJ's non-demeanor-based adverse credibility finding -- and thus the BIA's affirmance of it -- rested on a subset of the "inconsistencies" that did not include the one regarding the loan that we have just reviewed, that finding could still stand. But, there is no basis for so concluding, given that the IJ expressly stated that she was relying on the "inconsistencies" that she identified when "taken in the aggregate."

Thus, the BIA upheld an adverse credibility determination that the IJ reached in part based on an inconsistency in Reyes's story that simply was not an inconsistency. Nor can we say that absent the adverse credibility finding, Reyes's CAT claim would necessarily fail. We therefore must vacate the BIA's ruling affirming the IJ's denial of that claim. See Cuesta-Rojas, 991 F.3d at 272-73, 278-79; Mboowa, 795 F.3d at 228-29; Jabri, 675 F.3d at 26; see also Mukamusoni v. Ashcroft, 390 F.3d 110, 122 (1st Cir. 2004) (explaining that it is error to treat an asylum applicant's testimony as if it were "weaker than it actually was" and to then "demand[] a higher level of corroboration" on that mistaken basis than otherwise would be required).

**III.**

For the foregoing reasons, Reyes's petition for review is granted, the ruling of the BIA is vacated, and we remand for further proceedings consistent with this opinion. Accordingly,

Reyes's petition for review of the BIA's denial of his motion

for reconsideration is <u>dismissed</u> as moot.