# Matter of J-G-R-, Respondent

*Decided August 11, 2023*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Torturous conduct committed by a public official who is "acting in an official capacity," meaning acting under color of law, is covered by the regulations implementing the Convention Against Torture, but such conduct by an official who is not acting in an official capacity is not covered. *Matter of O-F-A-S-*, 28 I&N Dec. 35 (A.G. 2020), followed.

(2) The key consideration in determining if an official's torturous conduct was undertaken "in an official capacity" for purposes of CAT eligibility is whether the official was able to engage in the conduct because of his or her government position, or whether the official could have done so without connection to the government.

FOR THE RESPONDENT: Ethan R. Horowitz, Esquire, Lawrence, Massachusetts

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge; CREPPY and HUNSUCKER; Appellate Immigration Judges.

MALPHRUS, Deputy Chief Appellate Immigration Judge:

This case was last before us on February 2, 2021, when we dismissed the respondent's appeal of the denial of his application for protection under the regulations implementing the Convention Against Torture ("CAT").[1] On June 14, 2022, the United States Court of Appeals for the First Circuit granted the respondent's petition for review. *Reyes v. Garland*, 37 F.4th 1 (1st Cir. 2022). The respondent has filed a motion to remand the record to the Immigration Judge for further proceedings. We will grant the motion to remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Department of Homeland Security placed the respondent in removal proceedings in May 2017. The respondent conceded removability and filed applications for asylum and withholding of removal under sections

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c)–1208.18.

208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018), and for CAT protection.

The respondent claims two men wearing police uniforms detained him in a police station in the Dominican Republic, stabbed him with a screwdriver, and ordered him to repay money they claimed he owed a local business owner. He testified the men later shot him because he was unable to repay the money. He was hospitalized and then released into the custody of the same two men, who again stabbed him with a screwdriver.

On October 24, 2019, the Immigration Judge denied the respondent's applications based on an adverse credibility finding and, alternatively, for failure to meet his burdens of proof. On appeal, the respondent challenged only the Immigration Judge's adverse credibility finding and the denial of CAT protection. We affirmed the Immigration Judge's adverse credibility finding and held that, because the respondent lacked credibility and there was no objective evidence in the record independently establishing his eligibility for CAT protection, he did not satisfy his burden of proof. Granting the respondent's petition for review, the First Circuit held that the Board erred in affirming the Immigration Judge's adverse credibility finding and vacated our decision because it could not conclude that the respondent's CAT claim would necessarily fail absent the adverse credibility finding. *Reyes*, 37 F.4th at 6–8.

## II. ANALYSIS

CAT protection is available when a respondent demonstrates a clear probability of torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2020). Torturous conduct committed by a public official who is "acting in an official capacity," meaning acting under color of law, is covered by the regulations implementing the Convention Against Torture, but such conduct by an official who is not acting in an official capacity is not covered. This decision articulates a national standard for Immigration Judges to apply when determining whether torturous conduct is undertaken "in an official capacity," i.e., under color of law, for purposes of CAT eligibility.[2]

---

[2] The standard articulated here is not controlling in Immigration Courts within the jurisdiction of the Ninth Circuit. The Ninth Circuit does not recognize a distinction, for purposes of CAT protection, between public officials who engage in torturous conduct in an official capacity and those who engage in such conduct for purely private motivations. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 362 (9th Cir. 2017); *see also Macedo Templos v. Wilkinson*, 987 F.3d 877, 884 (9th Cir. 2021) (citing *Barajas-Romero* approvingly and holding that "[e]ven if the judicial officers were not in uniform and did not act in their

A.  Legal Developments

In 2019, the Board issued *Matter of O-F-A-S-*, 27 I&N Dec. 709 (BIA 2019), examining the requirement that a public official be acting "in an official capacity" for the purposes of CAT protection.  We recognized that the Attorney General had interpreted the phrase "in an official capacity" in 8 C.F.R. § 1208.18(a)(1) to mean "under color of law" as that term is used in the federal civil rights context.  *See Matter of O-F-A-S-*, 27 I&N Dec. at 714–15 (citing *Matter of Y-L-, A-G- & R-S-R-*, 23 I&N Dec. 270, 285 (A.G. 2002), where the Attorney General held that "[t]he scope of the Convention is confined to torture that is inflicted under color of law"); *see also Garcia-Aranda v. Garland*, 53 F.4th 752, 759 (2d Cir. 2022) ("As for who qualifies as a government actor, the Attorney General and our sister circuits have interpreted the regulation's reference to public officials (or other persons) 'acting in an official capacity' to mean any public official at any level of government (or any other person) acting 'under color of law,' as that phrase is used in the civil-rights context.").

Our decision articulated a national standard for determining whether torturous conduct by public officials is undertaken "in an official capacity." *Matter of O-F-A-S-*, 27 I&N Dec. at 715–18.  This standard imported principles from federal civil rights cases addressing whether a public official's actions were taken "under color of law."  *Id.*

The Attorney General later referred the decision in *Matter of O-F-A-S-* to himself for review and decided *Matter of O-F-A-S-* ("*O-F-A-S- II*"), 28 I&N Dec. 35 (A.G. 2020).  The Attorney General agreed with the Board's holding that "acting in an official capacity" means acting "under color of law."  28 I&N Dec. at 38–39, 41; *see also H.H. v. Garland*, 52 F.4th 8, 22–23 (1st Cir. 2022) (explaining that in *Matter of O-F-A-S- II*, "the Attorney General issued a precedential opinion interpreting the CAT's 'official capacity' requirement,

---

official capacity, [the respondent had] sufficiently demonstrated that he was the victim of an official perpetration of violence," and was therefore eligible for CAT protection).

The Ninth Circuit's interpretation is inconsistent with our understanding of 8 C.F.R § 1208.18(a)(1), which, like the CAT (which the regulation implements), "applies only to torture that occurs in the context of governmental authority, excluding torture that occurs as a wholly private act or, in terms more familiar in U.S. law, it applies to torture inflicted 'under color of law.'"  Message from the President of the United States Transmitting the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, S. Treaty Doc. No. 100-20, at 4 (1988).  If the regulation is read as the Ninth Circuit interprets it, then it would provide protection to persons tortured by public officials acting in a purely private capacity and in furtherance only of their own personal objectives. In our view, this was not the intent of the Convention Against Torture or the regulations implementing it.

holding that the term 'official capacity' is subject to the same analysis applicable to actions taken 'under color of law' in the [42 U.S.C.] § 1983 context").

The Attorney General vacated and remanded the Board's decision, however, on grounds unrelated to our articulation of a national standard for determining when a public official acts "in an official capacity" for purposes of determining CAT eligibility. *See Matter of O-F-A-S- II*, 28 I&N Dec. at 38–41. First, the Attorney General disagreed with the Board's definition and application of the phrase "rogue official" in the context of determining CAT eligibility. He explained that continued reliance on that phrase "risks confusion, not only because it suggests a different standard from the 'under color of law' standard, but also because 'rogue official' has been interpreted to have multiple meanings." *Id*. at 38 (citations omitted). Second, the Attorney General disagreed with what he perceived to be the Board's suggestion, albeit unintended, that there is a distinction between low-level and high-level officials in the "under color of law inquiry." *Id*. at 41–42.

Thus, in the new articulation of the standard presented here, we do not use or refer to the term "rogue official," and we do not suggest that the standard applies differently to high-level and low-level public officials.

### B. "Under Color of Law"

For purposes of CAT protection, "acting in an official capacity" means acting "under color of law." A public official acts "under color of law" when he or she "exercise[s] power 'possessed by virtue of . . . law and made possible only because [he or she was] clothed with the authority of . . . law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also DiDonato v. Panatera*, 24 F.4th 1156, 1161 (7th Cir. 2022) ("To plead that a defendant acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct. That the defendant is a state employee is not enough.").

An act that is motivated by personal objectives may be under color of law when the actor uses his or her official authority to further those objectives. *See Garcia v. Holder*, 756 F.3d 885, 892 (5th Cir. 2014) (involving extortion by apparent police officers). "The dispositive question is whether the [official] was exercising the power [he or] she possessed based on state authority or was acting only as a private individual." *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Thus, in determining if a public official who engaged in torture was "acting in an official capacity," it is key to consider whether he or she was only able to accomplish the acts of torture by virtue of holding official status.

*See United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991) (addressing assault by police officer for personal reasons while cloaked with the authority of law). In evaluating if a public official acted under color of law, circuit courts have often relied on whether the actor's government connections provided physical access to the victim, or to the victim's whereabouts or other identifying information.

For example, in *Garcia*, 756 F.3d at 887–89, the victim was extorted, threatened, and beaten shortly after he had provided required information to government officials: first, when he applied for a national identity card; second, when he was stopped and questioned at a police checkpoint. The Fifth Circuit determined that the offenders' ability to obtain information about the victim's whereabouts and his financial status from other public officials who had acquired that information in their official capacities was a strong indication that the offenders' actions were taken under color of law and therefore "in an official capacity" for purposes of CAT eligibility. *Id.* at 892–93.

Similarly, in *Ramirez-Peyro v. Holder*, 574 F.3d 893, 902–04 (8th Cir. 2009), the Eighth Circuit recognized that Mexican government officials who, in their official capacity, obtained information about the victim's identity and whereabouts would be acting under color of law if they provide that information to drug cartels who then tortured the victim. In these cases, the actor's official capacity effectively provided the means to access, locate, or harm the victim.

Also relevant to, but not dispositive of, the "under color of law" analysis is whether a law enforcement officer was on duty and in official uniform at the time of the torturous conduct. *See United States v. Christian*, 342 F.3d 744, 751–52 (7th Cir. 2003) (holding that an officer acted under color of law when he attacked an inmate because, even though the attack was motivated by the officer's personal reasons, the officer was on duty and in uniform at the time of the attack, had access due to his official status, and enlisted the aid of other officers in the jail); *see also DiDonato*, 24 F.4th at 1160 ("Nor is it dispositive whether the state employee was on- or off-duty at the time the incident occurred.").

Whether the official is in uniform and/or used a service weapon at the time of the conduct is not dispositive. Those items can be obtained outside the normal channels of government operations, and they may not be necessary to the public official's ability to engage in the conduct. *See Butler*, 685 F.3d at 1267–68 (holding that an officer's use of her service weapon and handcuffs to restrain, threaten, and beat the victim did not render her conduct undertaken under color of law because someone who is not a law enforcement officer could also own a handgun and handcuffs, and use them to restrain and beat a person); *see also Barna v. City of Perth Amboy*, 42 F.3d

809, 817–18 (3d Cir. 1994) (holding that a police officer did not act under color of law, even though he was in uniform and used a government-issued nightstick to beat the victim, because he was off duty, outside his jurisdiction, and he did not encounter the victim as part of police business); *see also Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1515 (11th Cir. 1997) (holding that an officer's conduct in breaking down an apartment door and raping a woman occupant while he was in uniform was not under color of law because there was no evidence that he accomplished the act because of the power he possessed under state authority).

Another relevant consideration in determining whether an official's conduct is under color of law is whether the official threatened and had the ability to retaliate through governmental channels if the victim reported the conduct to authorities. *See Tarpley*, 945 F.2d at 809 (holding that an assault by a police officer was under color of law where he repeatedly told the victim that he could beat and kill the man without any consequences because he was an officer, and enlisted the aid of another officer during the assault).

In sum, the key consideration in determining if an official's torturous conduct was undertaken "in an official capacity" for purposes of CAT eligibility is whether the official was able to engage in the conduct because of his or her government position, or whether the official could have done so without connection to the government. In making this determination, the Immigration Judge should consider whether the official's government connections provided access to the victim, revealed his or her whereabouts, or provided other identifying information. The Immigration Judge should also consider whether the official was on duty and/or in uniform at the time he or she engaged in the torturous conduct, and whether other officials cooperated or facilitated the conduct. The Immigration Judge should additionally consider whether the offending official threatened to retaliate through official channels if the victim reported the conduct to authorities. *See Magee v. Trs. of Hamline Univ.* 747 F.3d 532, 535 (8th Cir. 2014) (holding that factors relevant to the color of law analysis include "whether the officer is on duty and in uniform, the motivation behind the officer's actions, whether the officer had access to the victim because of his position, and whether the officer threatened official conduct in the future").

The analysis required by this standard is fact intensive. *See Garcia-Aranda*, 53 F.4th at 760 ("[W]hether any particular official's actions ultimately satisfy [the color of law] standard is a fact-intensive inquiry, as 'there is no bright line test for distinguishing "personal pursuits" from activities taken under color of law.'" (quoting *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994))). In making factual findings regarding the official's conduct, the Immigration Judge should assess both direct and circumstantial evidence.

## III.  CONCLUSION

We will remand the record to the Immigration Judge to determine if the respondent is credible, consistent with the First Circuit's remand order.  If the Immigration Judge finds the respondent credible on remand, she should reassess the respondent's eligibility for CAT protection.  Her review of the respondent's CAT claim should include a determination as to whether the two men who detained, stabbed, and threatened the respondent were actual police officers and, if so, whether their conduct was undertaken "in an official capacity," i.e., under color of law, using the standard articulated above.  Specifically, the Immigration Judge should address whether the men were able to engage in their conduct only because they were clothed with the authority of law.

If the Immigration Judge determines that the two men were not actual police officers or did not engage in their conduct "in an official capacity," the Immigration Judge must also determine whether the respondent has established that a public official acquiesced in their conduct and would likely acquiesce in the future.  *See H.H.*, 52 F.4th at 19–20 ("An applicant seeking to establish acquiescence must first demonstrate the likelihood of a foreign government's awareness of torture, and then show a likely breach of the government's duty to intervene to prevent the torture.").

The parties should be provided the opportunity to file additional evidence and legal arguments on remand.  The following order will be entered.

**ORDER:**  The motion to remand is granted, and the record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new decision.